UNITED STATES of America,
Plaintiff-Appellee,

v.

Kay Lynn FRYE, Defendant-Appellant.

No. 82–2656.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1984.

Decided June 21, 1984.

Michael J. O'Leary, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Peoria, Ill., for plaintiff-appellee.

John H. Bisbee, Bisbee & Nagan, Macomb, Ill., for defendant-appellant.

Before ESCHBACH and FLAUM, Circuit Judges, and MARSHALL, District Judge.*

FLAUM, Circuit Judge.

This appeal stems from the defendant's guilty plea and subsequent conviction in federal court on a charge of bank larceny. Approximately one year after her conviction, the defendant filed a motion for relief under 28 U.S.C. § 2255 (1982), claiming that her guilty plea was invalid because it was not made knowingly and intelligently. The district court dismissed her section 2255 motion without an evidentiary hearing, and the defendant appealed. We reverse the district court and remand for an evidentiary hearing on the question of whether the defendant's guilty plea was entered knowingly and intelligently.

## I.

The defendant's husband, Barry Frye, was the owner and operator of Frye Auto Sales in Vermont, Illinois. In 1979, Frye Auto Sales began experiencing serious financial difficulty. Beginning in 1980, the defendant, her husband, and two others allegedly participated in a "check-kiting" scheme. This essentially involved transferring money between accounts in four different banks over a period of time, in order to create the false appearance of having sufficient money to meet the financial obligations of Frye Auto Sales. The result of this scheme was that one of the banks was left with eleven checks that were not honored upon presentation for payment, and it suffered a loss of approximately $134,000. Although the record in this case indicates that Barry Frye was the principal perpetrator of the check-kiting scheme, the defendant has admitted that she signed some of the checks that later were used to transfer money between accounts.

In November 1980, Barry Frye was interviewed by several FBI agents about his banking practices. Shortly thereafter, he, the defendant, and Joylene Frye, Barry's former wife and an employee of Frye Auto Sales, consulted a Peoria attorney about possible criminal charges against them. This attorney agreed to represent all of them, and the three Fryes met with him twice more during the following two months. On January 30, 1981, the defendant, on her attorney's advice, submitted to an interview by FBI agents without the presence of counsel. In April 1981, the Fryes again met with their attorney. At this time, the attorney told the defendant that the FBI did not consider her statements to be exculpatory, as she had hoped. He advised the defendant to plead guilty to bank larceny and told her he had arranged for her to receive a sentence of probation and restitution.

On June 18, 1981, the defendant waived indictment and pleaded guilty in federal court in Peoria to a one-count information charging her with violating 18 U.S.C. §§ 2 and 2113(b).[1] On July 28, 1981, the defend-

---

* The Honorable Prentice H. Marshall, District Judge for the Northern District of Illinois, is sitting by designation.

1. 18 U.S.C. § 2 reads:
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
   18 U.S.C. § 2113(b) reads:
   Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

ant was sentenced to a term of three years probation and was ordered to pay restitution in the approximate amount of $43,000.[2]

On August 31, 1982, the defendant filed a motion in federal court in Peoria to vacate her conviction under section 2255. Several days later she filed another motion seeking leave of the court to take the deposition of the attorney who had represented her before and during her plea proceedings. The district court scheduled a hearing for September 24, 1982, on the defendant's section 2255 motion, directed the United States Attorney to file an answer to that motion, and informed the defendant that it would rule on the motion to take her former attorney's deposition at the September 24 hearing. Shortly thereafter, the defendant filed an amendment to her section 2255 motion, alleging that during her plea proceedings the trial court failed to advise her of her right to the effective assistance of counsel and her right to representation separate from that accorded her codefendant as is required by Rule 44(c) of the Federal Rules of Criminal Procedure. The government then filed its answer opposing the defendant's section 2255 motion.

On September 24, 1982, proceedings on the defendant's section 2255 motion were held before the same trial judge who had accepted the defendant's guilty plea. The proceedings were non-evidentiary in nature. The court heard the arguments of both parties, decided that an evidentiary hearing was not necessary to its ruling on the defendant's section 2255 motion, and dismissed the defendant's motion. This appeal followed.

## II.

The primary issue on this appeal is whether the district court erred in dismissing the defendant's section 2255 motion without any evidentiary hearing. Section 2255 requires a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Although section 2255 does not state explicitly that the required hearing must be evidentiary in nature, it has been interpreted widely as requiring an evidentiary hearing unless the motion raises no legally cognizable claim, the allegations in the motion are unreasonably vague, conclusory, or incredible, or the factual matters raised by the motion may be resolved by the district court on the record before it. *See, e.g., Procunier v. Atchley,* 400 U.S. 446, 451–52, 91 S.Ct. 485, 488, 27 L.Ed.2d 524 (1971); *Marchibroda v. United States,* 368 U.S. 487, 494–96, 82 S.Ct. 510, 513–14, 7 L.Ed.2d 473 (1962); *Baumann v. United States,* 692 F.2d 565, 570–71 (9th Cir.1982); *United States v. Costanzo,* 625 F.2d 465, 469–70 (3d Cir.1980); *Sosa v. United States,* 550 F.2d 244, 250 (5th Cir. 1977). In the instant case, the defendant contends that an evidentiary hearing was necessary for the court to determine whether her guilty plea was entered knowingly and intelligently. We agree.

■ It is well established that a guilty plea is valid only if made voluntarily, knowingly, and intelligently. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). In her motion for post-conviction relief under section 2255, the petitioner alleged that her plea was not entered knowingly and intelligently in essence because she was not given effective assistance of counsel. She claimed that she was in fact an unwitting participant in the check-kiting scheme and

---

**2.** Barry Frye also pleaded guilty to a violation of 18 U.S.C. §§ 2 and 2113(b). He also was charged with and pleaded guilty to a violation of 18 U.S.C. § 1014 (1982), overvaluing a security or making false statements to induce favorable action by a bank. He was sentenced to make restitution in the approximate amount of $80,000 and to a period of probation. Joylene

Frye originally was scheduled to plead with Kay and Barry Frye. However, she changed her mind and secured separate counsel. On March 16, 1982, she was indicted and charged with 11 counts of violating 18 U.S.C. § 2113(b) and 11 counts of violating 18 U.S.C. § 1014. She was tried before a jury in federal court in Peoria and acquitted on all counts.

thus did not have the intent to steal required for conviction under 18 U.S.C. § 2113(b), but that her attorney advised her to plead guilty without giving adequate consideration to a possible defense of lack of intent, and without informing her of this possible defense.[3] In her recounting of the events preceding her plea of guilty, she suggested that her attorney had had a conflict of interest and that he had paid much attention to her husband's defense at the expense of her defense. She also stated that her attorney suggested to the three Fryes that by cooperating with the prosecution, each one of them would enhance the chances of the others to receive a sentence of probation instead of incarceration.

From our review of the record, it appears that the district court dismissed the defendant's motion without an evidentiary hearing for two reasons. First, it determined from the record before it that there was a factual basis for the defendant's guilty plea. In making this determination, the court appeared to give great weight to the defendant's statements to the FBI admitting involvement in the check-kiting scheme. Second, it determined from the record before it that the defendant knew the facts that the prosecution intended to prove in its case against her and admitted to them. Based on these two findings, it concluded that her guilty plea was knowing and intelligent. Furthermore, it explicitly stated that the question of whether it was a knowing and intelligent plea "had nothing to do with what her lawyer told her." Appellant's Appendix at 91.

■ We find that the district court applied an incorrect legal standard in deciding whether the defendant's plea was knowing and intelligent. It is true, as the district court held, that for a guilty plea to be valid normally it must have a basis in fact and the defendant must admit to that basis in fact. *See United States v. Plisek,* 657 F.2d 920, 924 (7th Cir.1981); *United States v. Johnson,* 612 F.2d 305, 309 (7th Cir.1980). However, in order to enter a valid guilty plea, a defendant also must possess an understanding of "the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *Nash v. Israel,* 707 F.2d 298, 302 (7th Cir.1983). This means, among other things, that a defendant must understand not only the nature of the charge against him or her, but also that his or her conduct actually falls within the charge. *See McCarthy v. United States,* 394 U.S. at 467, 89 S.Ct. at 1171. Similarly, it means that before pleading guilty a defendant should be made aware of possible defenses, at least where the defendant makes known facts that might form the basis of such defenses. *See Sober v. Crist,* 644 F.2d 807, 809 n. 3 (9th Cir.1981); *Thundershield v. Solem,* 565 F.2d 1018, 1028 (8th Cir.1977). In short, a valid guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763

---

**3.** In her § 2255 motion, the defendant alleged the following:

She was denied the effective assistance of counsel in that (i) her lawyer failed to advise her of the nature and elements of the charge against her; (ii) failed to understand the facts and the law to determine whether or not she had any defense to the charge against her when, in fact, she had a complete defense; (iii) undertook to represent the defendant when in fact and law that representation was inconsistent with, conflicted with, and, indeed

was mutually exclusive with the representations of the Defendant's Co-Defendant; (iv) advised the Defendant to plead guilty under circumstances when that advice was erroneous in that Defendant is and was absolutely innocent of the charge against her; and (v) prevailed upon the Defendant to give a voluntary statement to the F.B.I. without the assistance or presence of counsel and allowed the government to incorrectly infer an admission of guilty from such statement.

Appellant's Appendix at 2.

(1970); *Sierra v. Government of Canal Zone*, 546 F.2d 77, 81 (5th Cir.1977).

■ In this case, the fact that the defendant admitted involvement in the check-kiting scheme is not sufficient to support her guilty plea. By pleading guilty, the defendant was waiving her right to make the prosecution prove to a judge or jury beyond a reasonable doubt not only that she participated in the check-kiting scheme, but also that she did so with a culpable state of mind. She could not knowingly waive this right unless she fully understood what she was waiving. *See Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (guilty plea to second-degree murder invalid where defendant was not informed that intent to cause death was an element of the offense). The district court made no finding that the defendant had this understanding. Moreover, we think that on the state of this record there is some question as to whether she had the requisite understanding and that this question is sufficient to warrant an evidentiary hearing on the matter. Three facts strike us as particularly significant.

First is the fact that her attorney also was representing her husband. The record indicates that the defendant and her husband did have different degrees of involvement in the check-kiting scheme, and that her husband stood the greater chance of receiving a sentence of incarceration for his involvement.[4] The record also indicates that the defendant's attorney was aware of this fact, and that he expressed the belief that the cooperation of each of the defendants would enhance the chances of the others to avoid a sentence of incarceration.[5] Thus, the defendant's allegation in her section 2255 motion that her attorney had a conflict of interest is not implausible. *See generally* Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interests and The Professional Responsibilities of the Defense Attorney*, 62 Minn.L. Rev. 119, 125–27 (1978) (discussing conflict of interest in the context of plea bargaining). More importantly, it is also not implausible that, perhaps because of this possible conflict of interest, her attorney did not give adequate consideration to a defense of lack of intent and thus never informed her that she might have such a defense. Since this alleged failure by the defendant's attorney has a bearing on the question of whether the defendant's plea was knowing and intelligent, and since the truth of the defendant's allegation could not be tested on the basis of the record, the defendant should have received an evidentiary hearing.

Second, we find it significant that the defendant has never admitted that she had the intent to steal required for a conviction under the federal bank larceny statute. Although both the district court, *see* Appellant's Appendix at 83, and, apparently, the defendant's counsel seemed to believe that the defendant's statements to the FBI clearly inculpated her in the check-kiting scheme, we do not share this view. Although the defendant did state that she was helping her husband in the hopes that he might "acquire additional borrowing power and a new avenue of financing," *see* Appellant's Appendix at 23, we do not find this statement, or any other in the record before us, to imply necessarily that she had the intent to steal required for a conviction. In this respect this case is very much like *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), in which the Supreme Court affirmed the district court's grant of habeas corpus relief from

---

4. In addition to being charged with bank larceny, Barry Frye was charged with fraud against a bank. *See supra* note 2. The Frye's attorney arranged for a plea agreement that ensured probation for Kay and Joylene, but was unable to receive such an assurance with respect to Barry.

5. The government suggests that the defendant's guilty plea was calculated to enhance her husband's chances of receiving a sentence of proba-tion, and it argues that this was her prerogative and that it does not constitute grounds for reversal here. However, that is not the issue before us. Even if the defendant did plead guilty for the reason that the government suggests, such a plea still would not be knowing and intelligent if she was not made aware that she had a possible defense to the charge against her.

a state court conviction on the ground that the accused had pleaded guilty to second-degree murder without being informed that the intent to cause the death of his victim was an element of the offense. The Court found it significant that this intent was a critical element of the offense, *id.* at 647 n. 18, 96 S.Ct. at 2258 n. 18, and that the accused had "made no factual statement or admission necessarily implying that he had such intent." *Id.* at 646, 96 S.Ct. at 2258. The Court also noted that the defendant's low mental capacity "lends at least a modicum of credibility" to the defense's theory that the defendant did not have the intent required for a second-degree murder conviction. *Id.* at 647, 96 S.Ct. at 2258.

Finally, we deem it significant that the district court accepted the defendant's guilty plea without engaging her in a meaningful dialogue. Rule 11 of the Federal Rules of Criminal Procedure requires that before accepting a defendant's guilty plea, a court must have a colloquy with the defendant that "would lead a reasonable person to believe that the defendant understood the nature of the charge." *United States v. Thompson*, 680 F.2d 1145, 1155 (7th Cir.1982). Whether a colloquy is sufficient in a particular case will depend on the facts of that case. *United States v. Wetterlin*, 583 F.2d 346, 351 (7th Cir.1978). In the present case the district court's exchange with the defendant and her husband consisted of a summary paraphrasing of the charges against them, and a series of routine questions, all of which were answered with a "yes" or "no." Although in paraphrasing the charges the court did mention that bank larceny required an intent to steal, there was no explanation of the intent requirement. We find that this colloquy was inadequate under the circumstances of this case. Because the defendant and her husband clearly appeared to have different degrees of involvement in the check-kiting scheme, and because they were represented by the same counsel, the district court should have engaged the defendant in a dialogue to ensure that she understood what she was doing, accepting "yes" and "no" answers in this context was not enough. Although we do not find this violation of rule 11 in and of itself to require a reversal,[6] we do find that it enhances the need for an evidentiary hearing to determine whether the defendant's guilty plea was knowing and intelligent. One of the purposes of rule 11 is to produce, at the time a guilty plea is entered, a complete record of the factors relevant to the determination of the guilty plea's validity. *McCarthy v. United States*, 394 U.S. at 465, 89 S.Ct. at 1170. In this case, because there was insignificant dialogue, there is an inadequate record. Moreover, if a discussion of the intent requirement had occurred during the plea proceedings, the defendant's counsel's alleged failure to discuss the matter with her might have been rendered harmless, thus obviating the need for an evidentiary hearing. *See Henderson v. Morgan*, 426 U.S. at 647, 96 S.Ct. at 2258.[7]

6. On a motion brought under § 2255, relief is available for rule 11 violations only if the error of law is jurisdictional, constitutional, or is a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974); *Carreon v. United States*, 578 F.2d 176, 179 (7th Cir.1978). On the record before us, we do not find that the district court's rule 11 violation meets this standard.

We take a similar position with respect to the district court's alleged failure to comply with Rule 44(c) of the Federal Rules of Criminal Procedure. We agree with the defendant that under the circumstances of this case rule 44(c) required the district court to "take such measures as may be appropriate to protect [the] defendant's right to counsel," and that the district court failed to satisfy this requirement. However, a failure to comply with rule 44(c) "does not mandate a reversal if the defendant is unable to demonstrate an actual conflict." *United States v. Bradshaw*, 719 F.2d 907, 915 (7th Cir.1983). In this case, the evidentiary hearing that we are ordering should reveal whether in fact the defendant's counsel was representing conflicting interests.

7. Similarly, under some circumstances the district court may rely on the prosecutor to fully explain the charge to the defendant. *United States v. Gray*, 611 F.2d 194, 198–99 (7th Cir. 1979). In this case, the prosecutor did tell the defendant, her husband, and the court what it intended to prove if the case went to trial. However, we find nothing in the prosecutor's remarks that might render harmless the alleged

Because there was no such discussion, we are left with meaningful doubt as to whether the defendant was ever informed that she might not have had the intent required to be convicted of bank larceny under federal law. Accordingly, we reverse the district court's dismissal of the defendant's section 2255 motion, and we remand to the district court for an evidentiary hearing on this matter.

failure of the defendant's counsel to inform her of her possible defense.