**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joe S. LUMPKINS,
Defendant–Appellant.**

**No. 86–2706.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1988.

Decided May 3, 1988.

Scott R. Shepherd, Skadden, Arps, Slate, Meagher & Flem, Chicago, Ill., for defendant-appellant.

Bradley W. Murphy, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Joe Lumpkins asks that we allow him to withdraw his plea of guilty to four counts of sending threatening communications by mail, because the plea was entered involuntarily and lacked a sufficient factual basis. Lumpkins, acting with the assistance of counsel, pleaded guilty to four counts of an eight-count indictment charging violations of 18 U.S.C. § 876 (1982). At the sentencing hearing, where he was given a prison term that exceeded the Assistant United States Attorney's recommendation by two years, Lumpkins suggested that he had misunderstood the implications of his plea. The district judge reviewed the transcript of the plea hearing and reaffirmed his earlier conclusion that the plea was voluntary.

On appeal, Lumpkins renews his argument that he pleaded without fully understanding the possible consequences. He also asserts that the plea lacked a sufficient basis in fact. Specifically, Lumpkins contends that his plea was involuntary for purposes of the due process clause of the fifth amendment because of his confusion about the effect of the prosecutor's sentencing recommendation and the burden of proof with respect to his statute of limitations defense. He further contends that the district judge violated Rule 11(f) of the Federal Rules of Criminal Procedure by failing to establish an adequate factual ba-

sis for the guilty plea. For the reasons that follow, we affirm.

## I.

Lumpkins was indicted on May 21, 1986, on eight counts of sending threatening letters to his former wife.[1] The letters were allegedly mailed from prison where Lumpkins was serving a sentence for attempting to murder the same woman and for sending her threatening letters. Lumpkins filed three documents in opposition to the indictment. Two of these, a "Motion to Void Prosecution" and a "Motion for Declaratory Judgment," were filed pro se on June 23, 1986. These motions denied that the letters were intended to be threatening and alleged that at least one of the letters had been sent outside the statute of limitations period (i.e., more than five years before the indictment was handed down). Lumpkins was then given appointed counsel, who filed a Motion to Dismiss on July 18, 1986, alleging that five of the counts were time-barred.[2]

In August, 1986, Lumpkins pleaded guilty to four of the eight counts charged in the indictment. In return for the guilty plea, the government dropped counts five through eight and recommended a sentence of eight years' imprisonment followed by five years' probation. As required by Rules 11(c) and (d) of the Federal Rules of Criminal Procedure, the district court conducted a hearing to ensure that Lumpkins' plea was knowingly and voluntarily entered.[3] The judge's efforts to establish

---

**1.** A superseding indictment, needed to correct the misspelling of Lumpkins' name, was issued on June 8, 1986.

**2.** The motion to dismiss asserted that counts one, three, five, six and eight were time-barred on the face of the indictment. This assertion appears to have been based on a mistaken view that the applicable limit was three years rather than five years, as specified by 18 U.S.C. § 3282 (1982). Lumpkins' pro se motions and argument on appeal, however, concede that a five-year limitations period applies.

**3.** In August, 1986, Rule 11 contained the following provisions relevant to Lumpkins' claim that his plea was involuntary:

(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in

open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term

. . .

. . . .

(d) Insuring That the Plea is Voluntary. The court will not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney

that Lumpkins understood the charges against him, including the pertinent statute of limitations, are reflected in the following transcript excerpts:

THE COURT: Mr. Lumpkins, you've heard the representations of the Assistant United States Attorney as to what the government's evidence would establish if this matter went to trial, did you not?

MR. LUMPKINS: Right.

THE COURT: Is that an accurate statement of what happened?

MR. LUMPKINS: You know, I really don't want to—I really don't know what to say, you know, I'd say it's accurate, yes.

THE COURT: There is a specific reference made to four letters sent on certain dates. Are those dates accurate to the best of your knowledge?

MR. LUMPKINS: To the best of my knowledge they are accurate.

THE COURT: And did you actually write those letters?

MR. LUMPKINS: Yeah, at one time I actually writ them.

THE COURT: Did you mail those letters?

MR. LUMPKINS: I mailed them, but the problem with them letters is, and there is no way to prove it, that they was mailed seven years and put in envelopes to go out to send money to the kids. I can't prove it.

The best thing I can do—there is no way to prove it.

THE COURT: Are you saying that you did not cause to be delivered—

MR. LUMPKINS: I actually, yes, I caused them to be delivered at one time.

THE COURT: Are you saying that you deny that you caused them to be delivered on the dates that it is charged that they were placed in the mail?

MR. LUMPKINS: Right. But I writ the letters and I had them delivered and I also had the envelopes delivered. But what happened is she just—and there is no way I can prove it, you know, because it's such a mess. Your Honor, it's just a

mess. That's just all it is, and there is no way—

THE COURT: Well, the concern that I have of course is that anyone would plead guilty to something for which they don't believe they are guilty.

MR. LUMPKINS: Your Honor, I am because I writ the letters. I written the letters. I've never denied writing the letters. The first time I seen the letter I told them yes, I writ it. The only thing that is confusing about it is the time difference in the way that the people and the prosecutor is all in honestly of what he's saying, he believes that. He's in all honesty, he's not falsifying nothing. It is the people that gave him the letters is where they got falsified at, and I have no way of proving that they got falsified. But I did have them delivered.

THE COURT: If I understand what you are saying, you don't deny writing these letters or mailing the letters, but you're saying that the letters were mailed much earlier than the indictment would indicate that they were mailed to the point where the statute of limitations has run?

MR. LUMPKINS: What happened, you see—

THE COURT: Is that correct or not?

MR. LUMPKINS: I'm serving time for threatening letters. These letters were written with that bunch of letters, but while I'm in federal prison I sent envelopes with money to my children. That they taken these letters and put them in those envelopes, and I'm still guilty.

THE COURT: Are there dates on the letters themselves?

MR. LUMPKINS: No, I never date a letter. I don't think half of them is signed. I don't think half of them is even signed because, you know, because I sent her money every month the whole time I've been down. I work in the factory and I sent her money for my children the whole time I'm down. And that's where I messed up trying to help the kids.

. . . .

for the government and the defendant or his    attorney.

THE COURT: Well, the point I want to make and make very clearly here, Mr. Lumpkins, is I want to be convinced that you're entering this plea voluntarily.

MR. LUMPKINS: I'm entering it voluntarily. I asked the attorney to negotiate the plea. I asked him to negotiate it. But the only thing I was trying to point out to him is I'm not saying all the letters that he's got indicated is that way, but some of the letters were.

THE COURT: I just want to be sure that you understand, as I said earlier, that you have no duty to prove your innocence. The government has the duty to prove you guilty by competent evidence and beyond a reasonable doubt before you can be found guilty.

I don't want you to feel like you are for some reason coerced into entering this plea. It is your decision as to whether or not you wish to plead guilty, but I just want to be sure you clearly understand all your rights and you are not waiving those rights when you are pleading guilty.

MR. LUMPKINS: Right.

THE COURT: And you assure me that that's what you are doing?

MR. LUMPKINS: Right.

THE COURT: The Court finds an accurate factual basis exists for the entry of the plea in this case.

Tr. at 35–40 (Aug. 15, 1986 Plea Hearing).

The court also inquired into Lumpkins' understanding of the maximum sentence he could receive:

THE COURT: If the Court were to sentence you to the maximum provided by law under each of these four counts the total potential sentence that you could receive pursuant to this plea agreement would be up to 20 years in prison and a fine of up to $4,000. Do you understand that?

MR. LUMPKINS: No, I don't understand that.

THE COURT: You are charged, you are tendering a plea of guilty to four counts here?

MR. LUMPKINS: Right.

THE COURT: Each of them carries with it a maximum penalty of up to five years in prison and a fine of up to $1,000?

MR. LUMPKINS: Right.

THE COURT: If the Court were to sentence you to the maximum sentence in each of those counts and ordered that sentence would be served consecutively, that is that the sentence on Count II, for example, would begin to run when the sentence on Count I was completed, and so on. Then if you add all four of those counts together, four times five, four times five years would be 20 years, and four times $1,000 would be $4,000. So that the maximum sentence that the Court could impose under these counts in this case would be imprisonment for a period of up to 20 years and up to a fine of $4,000. Do you understand that now?

.... [The transcript indicates a break for Lumpkins to confer with his attorney.]

THE COURT: Okay?

MR. LUMPKINS: Yeah, okay. I understand that.

THE COURT: You're sure? If you have any question about it now is the time to ask.

MR. LUMPKINS: No. No questions.

THE COURT: Pardon?

MR. LUMPKINS: No questions.

THE COURT: I'm not saying that that is the sentence the Court will impose, but I want you to understand that theoretically the Court could impose that sentence pursuant to this agreement. Do you understand that?

MR. LUMPKINS: Yeah.

Id. at 30–32. At the conclusion of the plea hearing, the district judge found, despite some indications of confusion on Lumpkins' part, that the defendant understood the essentials of the charges against him.

The district judge also questioned the parties to satisfy himself that there was a factual basis for the plea.[4] The prosecutor

---

4. In August, 1986, Rule 11(f) read as follows:

(f) Determining the accuracy of the plea. Notwithstanding the acceptance of a plea of

described the government's evidence supporting counts one through four of the indictment. Tr. at 33–35. The district judge then questioned Lumpkins about the evidence and listened to the prosecutor's rebuttal of Lumpkins' claim that some of the letters had been mailed more than five years before the indictment was issued. Tr. at 38. Based on this discussion, the district judge found that the plea was supported by an adequate factual basis. Tr. at 39–40.

The judge sentenced Lumpkins to ten years' imprisonment to be followed by five years' probation. In response to Lumpkins' protest that he had pleaded with the understanding that his prison term would not exceed the prosecutor's recommendation of eight years, the district court agreed to review the transcript of the plea hearing. After completing that review, the district court issued an order rejecting Lumpkins' contention and reaffirming the sentence.

## II.

Defendants who plead guilty provide the government with a complete basis for their conviction and simultaneously waive their constitutional privilege against self-incrimination and their constitutional rights to have their cases tried before juries and to confront prosecution witnesses. *Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). Because of the importance of these rights, Rule 11 sets forth procedures to ensure that guilty pleas are knowingly and voluntarily given. It requires the court to develop a record "demonstrating that the guilty plea was voluntarily entered with an understanding of the charge." *McCarthy v. United States,* 394 U.S. 459, 469, 89 S.Ct. 1166,

1172, 22 L.Ed.2d 418 (1969).[5] In reviewing district courts' acceptance of guilty pleas under Rule 11, this court has stated that "in general, any noncompliance is reversible error." *United States v. Fountain,* 777 F.2d 351, 355 (7th Cir.1985). We have also noted, however, that "we should not give Rule 11 'such a crabbed interpretation that ceremony [is] exalted over substance.'" *United States v. Ray,* 828 F.2d 399, 404 (7th Cir.1987) (quoting Fed.R. Crim.P. 11(h) advisory committee's notes (1983)), and that "Rule 11 should not be used 'to lay a procedural trap for the government' by allowing a defendant to 'challenge a plea on a technicality.'" *Id.* (quoting *United States v. Reckmeyer,* 786 F.2d 1216, 1221 (4th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986)). Rule 11 is satisfied if, in view of all the circumstances surrounding the plea, it is clear that the defendant was informed of his or her rights. *United States v. Frazier,* 705 F.2d 903, 907 (7th Cir.1983) (per curiam).

This circuit has recognized that the tone, length and particularity of the exchange that a judge must have with a defendant vary with the circumstances of the case. The character of the required colloquy depends on factors including "the personal characteristics of the defendant, such as his age, education, intelligence, the alacrity of his responses, and also whether he is represented by counsel." *United States v. Wetterlin,* 583 F.2d 346, 351 (7th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979) (citing *Irizarry v. United States,* 508 F.2d 960, 964 (2nd Cir. 1974)); *see United States v. Fountain,* 777 F.2d at 356; *see also Nash v. Israel,* 707 F.2d 298, 302 n. 6 (7th Cir.1983) (plea colloquy must take account of complexity of charge).

---

guilty, the Court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

**5.** Lumpkins contends that his plea was involuntary under the due process clause as well as under Rule 11. The applicable version of Rule 11's voluntariness provisions (essentially the same as the current version) was intended to codify the constitutional requirements articulated in *Boykin v. Alabama. See* Fed.R.Crim.P. 11 advisory committee's note. Although Rule 11 requires certain plea procedures that the constitution does not, *see United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979), we know of no authority for the converse proposition. We therefore confine our discussion to whether the district court complied with Rule 11.

Lumpkins contends that the circumstances of his case necessitated an especially searching and painstaking inquiry into voluntariness. He argues that in conducting the plea hearing the district judge did not make sufficient allowances for Lumpkins' lack of education, inarticulateness and apparent confusion, for his mistrust of and inability to work effectively with the counsel who had been appointed for him and for the possible effects of the medication that Lumpkins was taking at the time (described at the hearing as "heart pills and valium").

The government takes a different view of these factors. While conceding that Lumpkins lacks formal education, the government points out that Lumpkins came to the plea hearing from prison where he was serving time for a prior conviction for the same offense and was therefore familiar with the charge. The government also contends that Lumpkins was familiar with the statute of limitations defense, noting that he had previously filed two pro se motions (although apparently with the assistance of another prisoner) disputing the government's description of the letters and asserting that at least one had been mailed more than five years before the indictment. Lumpkins, according to the government, demonstrated his ability to work with counsel through his statements to the court indicating that he had instructed his attorney to negotiate the plea agreement. Finally, the government dismisses Lumpkins' claim that his medication interfered with his ability to understand the proceeding on the basis of Lumpkins' own statement that the medication improved rather than diminished his understanding. Tr. at 9–10.

■ We believe that the care the district judge took to establish the voluntariness of Lumpkins' plea was appropriate under the circumstances. The forty-five page transcript of the plea colloquy does indeed show that Lumpkins had some difficulty understanding and responding to the judge's questions. But it also reveals that the judge was unusually painstaking in his explanations to Lumpkins and his efforts to provide a record that Lumpkins understood the charges. When a question elicited a muddled response from Lumpkins, the judge repeatedly paused to explain his inquiry more clearly and to ensure that Lumpkins understood.

The discussion of the maximum sentence, which Lumpkins views as evidence of confusion sufficient to invalidate his plea, illustrates the care taken by the district court. When asked if he understood that his plea of guilty to four counts could lead to a sentence of up to twenty years' imprisonment and a fine of up to $4,000, Lumpkins at first answered: "No, I don't understand that." The judge then explained how the maximum sentence had been calculated and indicated that he had the authority to impose this maximum. Lumpkins unambiguously stated that he understood these points. *See* Tr. at 32 (quoted *supra* at 7–8). Viewing Lumpkins' remarks as statements of a defendant who was competent to plead—Lumpkins has not challenged the district court's express finding that he was competent—we think this exchange conclusively demonstrates that Lumpkins understood the potential consequences of his plea.

Lumpkins' claim that he remained confused despite the district judge's explanations finds stronger, though still inadequate, support in the discussions of the statute of limitations issue. Lumpkins' statement that he could not prove the statute of limitations defense, tr. at 36–37 (quoted *supra* at 1446–1447) can be interpreted as evidence of Lumpkins' mistaken belief that he bore the burden of proving that the letters had been sent more than five years before the indictment. This statement can also be interpreted, however, as reflecting Lumpkins' realistic appraisal of his chances of rebutting the government's proof—i.e., of convincing a judge or jury that the postmarks on the envelopes that the government would introduce into evidence did not correspond to the dates on which the enclosed letters had been sent.

The latter interpretation is supported by aspects of Lumpkins' statute of limitations defense that make his chances of persuading a judge or jury that the letters were

sent before the statute of limitations period appear quite remote. In his pretrial motions and statements at the plea hearing, Lumpkins suggested that he had sent some of the letters (the number was never clearly specified) long before the indictment. He asserted that these letters were held by his former wife for two years, then by the government for three years, before being placed in envelopes bearing later postmarks that Lumpkins had used to mail money to his ex-wife for his children. Lumpkins conceded at the hearing that this defense did not apply to all of the letters, since the contents of some of the letters demonstrated that they were written after his prior conviction for sending threatening letters.[6] In view of the implausibility of the story by which Lumpkins proposed to explain away the postmarks, we do not think that the judge was bound to interpret Lumpkins' remarks about "proving" his defense as a sign that he misunderstood that the government would have to prove that the statute of limitations was met.

Even if we were to view Lumpkins' statements as evidence that he was confused about the burden of proof, the judge took appropriate measures to dispel this confusion before the plea was accepted. Shortly after Lumpkins' remark about his inability to prove his statute of limitations defense, the judge stressed to him that the "government has the duty to prove you guilty by competent evidence and beyond a reasonable doubt," to which Lumpkins responded, "Right." Tr. at 39 (quoted *supra* at 1447).[7] It is true that the judge could have offered

more precise clarification on the specific point of Lumpkins' possible confusion, *provided* that he interpreted Lumpkins' remark as evidence of misunderstanding. We do not believe, however, that Rule 11 or the due process clause can reasonably be construed to require district judges to detect and correct every possible misunderstanding of every defense that a defendant abandons by pleading guilty. *Cf. McMann v. Richardson,* 397 U.S. 759, 769–70, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970) (guilty plea voluntary despite possibility it was based on a mistaken judgment of the admissibility of key evidence). A guilty plea is not rendered involuntary by the possibility that a defendant, acting with assistance of counsel, may have erred in sizing up the odds of succeeding at trial.

### III.

We turn now to Lumpkins' argument that the district court violated Rule 11(f) by failing to conduct an adequate inquiry to ensure that there was a factual basis for the plea. Rule 11(f), unlike the provisions discussed above, "does not require a colloquy between judge and defendant; the court may find the factual basis in anything that appears *on the record.*" *United States v. Fountain,* 777 F.2d at 356; *see United States v. Ray,* 828 F.2d at 405–06. It is not therefore necessary that the defendant acknowledge "the truth of all facts essential to guilt." *United States v. Davis,* 516 F.2d 574, 577–78 (7th Cir.1975); *see also North Carolina v. Alford,* 400

---

**6.** During the plea colloquy, Lumpkins stated: "I'm not saying all the letters that he's got indicated is that way, but some of the letters were." Tr. at 39.

At oral argument, Lumpkins' appellate counsel pointed out that these references would not absolutely preclude Lumpkins from attempting a statute of limitations defense since letters referring to the December 22, 1980 conviction could still have been written more than five years before the May 21, 1986 indictment during the period from December 22, 1980, through May 20, 1981. We do not believe that the existence of this five-month gap, which neither Lumpkins nor his counsel commented upon in the motions filed with the district court or at the plea colloquy, materially improves the plausibility of Lumpkins' statute of limitations defense.

**7.** Lumpkins' basic understanding of the statute of limitations defense and the judge's careful discussion of the charges distinguish this case from *United States v. Frye,* 738 F.2d 196 (7th Cir.1984). The defendant in *Frye* asserted that her attorney had failed to advise her of the elements of the charge against her or to investigate an obvious defense based on lack of intent. *Id.* at 199 & n. 3. Further, the plea colloquy in that case "consisted of a summary paraphrasing of the charges ... and a series of routine questions, all of which were answered with a 'yes' or 'no.'" *Id.* at 201. The record here, in contrast, shows that Lumpkins was, at worst, confused about a relatively technical aspect of a partial defense and that the district court engaged him in a lengthy and painstaking discussion.

U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970) (constitution does not require that guilty plea be accompanied by "express admission of guilt").

■ Lumpkins claims that the district judge erred by failing to ensure that there was evidence on the record that would have definitively precluded the statute of limitations defense. We find, however, that the district judge was entitled to assess this defense himself and to determine how much it detracted from the factual basis for Lumpkins' plea. Lumpkins conceded, based on his understanding of the evidence, that the defense applied to, at most, some of the letters. The prosecutor contradicted Lumpkins' partial defense, asserting that the contents of the letters as well as the postmarks placed them within the statute of limitations period. Tr. at 38. Lumpkins points out that the judge could easily have examined the letters to determine how many of them lacked references to events during the statute of limitations period.[8] We do not think that this was necessary. After assessing the plausibility of Lumpkins' explanation for the postmarks that placed the letters within the statute of limitations period, the judge was entitled to treat the letters and postmarked envelopes as solid evidence even if the letters contained no references to events within five years of the indictment. Rule 11(f) requires an adequate factual basis for a guilty plea; it does not require the judge to replicate the trial that the prosecutor and defendant entered a plea agreement to avoid.

### IV.

Rule 11 and the due process clause provide essential protections against the entry of guilty pleas when defendants fail to appreciate the value of the rights they are

waiving or when there are insufficient factual indications of guilt. But if guilty pleas are to continue to play an important role in our system of criminal justice, *see Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), their finality cannot be sacrificed whenever a defendant comes to regret his plea after sentencing. There must therefore be some realistic limit on the inquiries that district judges are required to conduct to establish a record of voluntariness and factual support. The defendant's position in this case would go too far toward converting plea hearings into law school seminars on possible defenses and mini-trials on questions of factual guilt. The judgment of the district court is

AFFIRMED.

---

**8.** At the sentencing hearing, Lumpkins insisted that the letters cited in counts 1 and 4 be brought to him for examination. However, when the letters were produced Lumpkins made no effort to show that their contents supported his statute of limitations defense. Tr. at 40–43 (Oct. 9, 1986 Sentencing Hearing).