911 F.2d 736
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael J. MARSHALL, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 89-2042.
 United States Court of Appeals, Seventh Circuit.
 Argued March 6, 1990.
Decided Aug. 10, 1990.
 
 Appeal from the United States District Court for the Northern District of Illinois, Western Division, No. 84-CR-20023, Stanley J. Roszkowski, Judge.
 N.D.Ill.
 AFFIRMED.
 Before WOOD, JR., and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 I. STATEMENT OF THE CASE
 
 1
 In 1985, a jury convicted petitioner-appellant Michael J. Marshall and co-defendants of mail and wire fraud. The basis for the convictions was a loan scheme whereby victims paid fees to the defendants who promised to obtain long-term, low-interest, million dollar loans for them.[1] Those loans were never obtained and the fees were never refunded.
 
 
 2
 On appeal, Marshall challenged his conviction on a number of grounds. United States v. Ramsey, 785 F.2d 184 (7th Cir.1986). One of those claims was that he was denied effective assistance of counsel at the trial. We found that the record before us did not demonstrate a constitutional violation. First, we held that the failure to put on any defense was not necessarily ineffective assistance, because an incredible defense may be worse than no defense. We added that Marshall had not suggested that his lawyer overlooked an effective line of defense. Marshall's appellate counsel suggested that Marshall could have testified that he was duped by other people who assured him that the loans would close. He also argued that trial counsel McDonough's reason for not calling Marshall as a witness was based upon a misunderstanding of the law. In response to this argument, this court postulated some possible explanations for McDonough's decision, but declared that Marshall had not offered evidence on the subject and therefore had not substantiated his claim.[2]
 
 
 3
 In his motion under 28 U.S.C. Sec. 2255, Marshall again alleged he was denied effective assistance of counsel at trial. In support of that motion, he alleged that trial counsel: (1) failed to interview prospective witnesses or any of Marshall's former clients; (2) failed to investigate improprieties in the grand jury proceeding and failed to move to dismiss the indictment on the grounds that FBI agent Brannigan was present during the testimony of several grand jury witnesses; (3) failed to put on any defense at trial despite significant evidence that Marshall acted in good faith and lacked the requisite intent to defraud, including possible testimony by H. Wesley Robinson, James Coutts[3], special agent Brannigan, and Marshall himself; (4) advised Marshall not to take the stand based upon an erroneous understanding of the law and refused to allow him to testify; and (5) possessed a conflict of interest because of an affiliation with the law firm of the attorney for co-defendant McCreary, and intimidated McCreary into not testifying on behalf of Marshall by threatening to cross-examine him.
 
 
 4
 The district court held that the petition conclusively demonstrated no possibility of relief. Regarding McDonough's decision not to have Marshall testify, the court held that the evidence against Marshall was overwhelming and that the decision was probably the only sensible trial strategy. In addition, the court held that any possibility of prejudice was eliminated by the court's questioning of the defendant, at which time Marshall indicated his knowing waiver of his right to testify. The court declared that all other ineffectiveness issues were waived by Marshall's failure to raise them on direct appeal.
 
 
 5
 On a motion for reconsideration, the district court reversed its waiver determination, but still dismissed the motion without an evidentiary hearing because it conclusively found that Marshall was not entitled to relief. In arriving at that conclusion, the court stated that the in-court colloquy with Marshall demonstrated a knowing and voluntary relinquishment of his right to testify. Moreover, the court stated that McDonough's decision not to have Coutts testify was understandable because, as Marshall's former attorney, Coutts "must have had" extensive knowledge of the transactions and therefore probably would not have been a good witness for the defense. The court also noted that it will not readily second-guess decisions by trial counsel about presenting particular witnesses.
 
 II. ANALYSIS
 
 6
 In order to deny an evidentiary hearing under Sec. 2255, the district court must decide that "the record conclusively establishes that a defendant is entitled to no relief." 28 U.S.C. Sec. 2255; United States v. Kovic, 830 F.2d 680, 692 (7th Cir.1987). Under this standard, an evidentiary hearing is required unless "the motion raises no legally cognizable claim, the allegations in the motion are unreasonably vague, conclusory, or incredible, or the factual matters raised by the motion may be resolved by the district court on the record before it." United States v. Frye, 738 F.2d 196, 198 (7th Cir.1984). Analysis of the record in this case reveals that Marshall has failed to adequately alleged a possible violation of his right to effective assistance of counsel, and therefore that he was not entitled to an evidentiary hearing in the district court.
 
 
 7
 A number of the allegations asserted by Marshall are too conclusory to support an ineffective assistance claim. First, Marshall claimed that his attorney "failed to interview any prospective witnesses or any of Defendant's former clients in preparation for trial." In this contention, Marshall neither identifies any potential witnesses nor indicates the type of testimony that such an investigation could have produced. Therefore, this allegation is too vague to require an evidentiary hearing. The second claim is that the attorney failed to investigate improprieties in the grand jury proceeding leading to the indictment and failed to move to dismiss the indictment on the grounds that FBI agent Brannigan was present during the testimony of several witnesses. Marshall does not specify what "improprieties" should have been investigated, and does not provide any basis for his belief that Brannigan was present during the testimony of the witnesses. See Aleman v. United States, 878 F.2d 1009, 1012 (7th Cir.1989) (no evidentiary hearing required where petitioner failed to submit specific allegations and failed to demonstrate that he had actual proof of the allegation). In addition, Marshall did not attach any affidavits in support of his Sec. 2255 petition. See Barry v. United States, 528 F.2d 1094, 1101 (7th Cir.1976) (petition must be accompanied by a detailed and specific affidavit which shows actual proof beyond unsupported allegations). Thus, this allegation is also overly vague.
 
 
 8
 Finally, Marshall's claims regarding co-defendant McCreary do not support his claim of ineffective assistance. Marshall does not allege that McCreary would have been willing to testify at their joint trial absent the statements by McDonough. Moreover, McDonough's statement that he would cross-examine McCreary if he testified was more a statement of fact than a threat. Marshall also claims that McDonough had a conflict of interest because he was affiliated with the law firm of McCreary's attorney. Marshall does not indicate the nature of this affiliation or any actual conflict that resulted from it, see Cuyler v. Sullivan, 446 U.S. 335 (1980), and thus this allegation similarly fails for vagueness.
 
 
 9
 Marshall additionally claims that McDonough rendered ineffective assistance of counsel by failing to present any defense at the trial despite the existence of significant evidence indicating that Marshall lacked the mens rea of the crime. Specifically, Marshall points to the possibility of introducing: (1) the sworn statement of H. Wesley Robinson indicating that Marshall believed the loans would be funded; (2) testimony of James Coutts, attorney for Marshall's business, upon whose advice Marshall claims he acted; (3) testimony of FBI agent Brannigan to Marshall's former clients that after an 18-month investigation the FBI found no evidence that Marshall did anything wrong; and (4) testimony of Marshall concerning his lack of intent to defraud and his good faith. In addition, Marshall asserts that McDonough advised him not to testify and refused to put him on the stand based upon an erroneous understanding of the law.
 
 
 10
 These assertions are not "unreasonably vague" so as to excuse an evidentiary hearing, see United States v. Frye, 738 F.2d 196 (7th Cir.1984); however, the record provides a basis for those decisions by McDonough, and therefore conclusively establishes that Marshall is not entitled to relief on his claim. For instance, Marshall points to one ambiguous statement by Robinson which might indicate that he lacked the mens rea to commit the offense. The record reveals many other statements by Robinson which detail Marshall's involvement in the scheme and which indicate that he possessed the requisite knowledge. In fact, Robinson had agreed as part of his guilty plea to testify against Marshall on behalf of the government.
 
 
 11
 Marshall also asserts that McDonough could have called James Coutts to testify. Marshall fails to allege any favorable testimony which Coutts could have offered. Moreover, because Marshall was the president of the company set up to arrange the loans, any claim that he acted innocently on the advice of Coutts would have been inherently incredible. The fundamental issue at trial was whether Marshall was aware that the loans would never go through, and that contingency did not relate to any legal advice. Furthermore, any claim that he relied entirely on Coutts' legal advice would fail to explain numerous lies told to clients regarding the progress on the loans.
 
 
 12
 In addition, Marshall alleges that McDonough failed to call agent Brannigan to testify on his behalf at the trial. Brannigan allegedly stated to Marshall's former clients that after an eighteen month investigation the FBI had found no evidence that Marshall had done anything wrong. This testimony would be of limited relevance because the government eventually concluded that they indeed had enough evidence to charge Marshall. Marshall does not allege that the eighteen month period in question ended at the time that he was charged, and thus agent Brannigan's statement was not made with knowledge of all the evidence which eventually supported the charge. Moreover, McDonough certainly did not act unreasonably in believing that an FBI agent would not provide testimony that would be particularly helpful in exonerating his client from charges resulting from a government investigation.
 
 
 13
 Finally, the record does indicate McDonough's reason for advising Marshall not to testify.[4] At the trial, the government had introduced testimony that Marshall had shown clients a law degree and represented himself to them as an attorney. The government also introduced evidence indicating that representation to be false. At the post-trial sentencing hearing, McDonough said that he had planned on calling Marshall to the stand to testify, but that he did not put Marshall on the stand because Marshall could then be cross-examined regarding whether he presented himself as having a law degree. Marshall argues that this decision was based upon a misunderstanding of the law, because the government had already introduced that evidence in its case-in-chief. Even though the evidence had been introduced, however, McDonough could properly determine that the misrepresentation could be used to impeach Marshall's credibility. The testimony at trial indicated that Marshall continually promised clients that loans would be approved shortly, and that those loans were never approved. Any attempt by Marshall to testify that those representations were made in good faith would be significantly undermined on cross-examination by evidence that he lied to clients from the start by representing himself as an attorney. Therefore, McDonough could properly determine that Marshall would stand a better chance by not testifying and by relying on the government's burden of proof.[5] This decision does not demonstrate ineffective assistance, and no evidentiary hearing is required because the record demonstrates the reason for McDonough's decision.
 
 
 14
 In conclusion, we hold that the district court properly denied an evidentiary hearing on Marshall's claims. We emphasize that the Sec. 2255 standard is a strict one, and that an evidentiary hearing must be given unless the record conclusively demonstrates no entitlement to relief. The record in this case, however, meets that stringent standard, and therefore the decision of the district court is
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The facts are set forth at length in United States v. Ramsey, 785 F.2d 184 (7th Cir.1986)
 
 
 [2]
 In a related claim, Marshall argued in a pro se supplemental brief that McDonough did not allow him to take the stand, thus violating his right to testify. We held that "Marshall had, but bypassed, an opportunity to support such a claim in the district court", and that nothing in the record supported his assertion. As a result, we affirmed the conviction. After a petition for a rehearing, we noted that the district court had not held an evidentiary hearing on Marshall's claims of ineffective assistance of counsel. 785 F.2d at 195. Nevertheless, we held that the claim of ineffective assistance based upon the failure to put on a defense still could be rejected based upon the record and that Marshall could attempt to adduce favorable evidence under Sec. 2255
 
 
 [3]
 In a related claim, he contended that McDonough advised Coutts to be out of the country during the trial. Marshall does not indicate any basis for this allegation, and thus it is too conclusive to be a cognizable claim of ineffective assistance
 
 
 [4]
 Marshall also alleges that he was not allowed to testify. The record reveals an in-court colloquy between Marshall and the judge in which Marshall declared that his waiver of the right to testify was knowing and voluntary. Because Marshall does not allege any basis for questioning the reliability of that colloquy, his claim that he was not allowed to testify is meritless. see Blackledge v. Allison, 97 S.Ct. 1621, 1628-29 (1977)
 
 
 [5]
 Throughout the cross examination of the government witnesses, McDonough focused upon whether Marshall or the other defendants knew that the loans could not close. Therefore, the good faith of the defendants was made the primary issue throughout the trial. See also Ramsey, 785 F.2d at 188-89 (defendants contended that they lacked the requisite knowledge and that they had been bilked along with their clients)