996 F.2d 1220
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Randy BLACKWELL, Defendant/Appellant.
 No. 92-1831.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 8, 1993.*
Decided June 11, 1993.
 
 Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Randy Blackwell contends that the district court violated Rule 11 of the Federal Rules of Criminal Procedure when it accepted his guilty plea. This court finds adequate compliance with Rule 11 and hence affirms the district court.
 
 I. BACKGROUND
 
 2
 Throughout his life, Blackwell has suffered from learning difficulties. He never learned to read and left high school after earning only four credits in four and one-half years. However, despite these problems, a United States probation officer noted that Blackwell "was able to make himself understood and showed no evidence of mental or emotional disturbances."
 
 
 3
 Blackwell agreed to plead guilty to distributing cocaine, 21 U.S.C. § 841(a)(1), after he sold drugs to an undercover agent from the Drug Enforcement Administration. At Blackwell's plea hearing, his attorney explained that he "has some educational handicaps and difficulty, so I would ask the court to be somewhat patient with him in explaining the rights." In response, the court told Blackwell "[i]f you don't understand a question, you will have an opportunity to clarify it. I will interrupt the proceedings and you may consult with your attorney if you care to do so."
 
 
 4
 The court then asked Blackwell questions about his age, marital status, address, education, health and employment. Blackwell answered these inquiries appropriately; only one of his answers required clarification by the court.
 
 
 5
 THE COURT: What type of work have you done in the past three years?
 
 
 6
 MR. BLACKWELL: None.
 
 
 7
 THE COURT: What type of work have you ever done?
 
 
 8
 MR. BLACKWELL: CHA.
 
 
 9
 THE COURT: Pardon?
 
 
 10
 MR. BLACKWELL: CHA.
 
 
 11
 THE COURT: CHA? What did you do for CHA?
 
 
 12
 MR. BLACKWELL: Maintenance.
 
 
 13
 THE COURT: You said maintenance man?
 
 
 14
 MR. BLACKWELL: Yes.
 
 
 15
 The court next asked the attorneys for the government and the defense whether they questioned Blackwell's competency to plead guilty. Neither attorney doubted his capability, although Blackwell's attorney stated:
 
 
 16
 I don't have any doubt, your Honor. I believe he's competent to do that. I would repeat to the court, however, that I think he's somewhat slow in perhaps agreeing to the court in certain instances when he doesn't fully understand what he's saying. I'm only saying that because I have had difficulties with him from time to time understanding completely what it is that I'm trying to get across to him.
 
 
 17
 This response prompted the following colloquy:
 
 
 18
 THE COURT: Mr. Blackwell, do you understand the questions that I've asked you?
 
 MR. BLACKWELL: Some of them
 
 19
 THE COURT: Which ones didn't you understand?
 
 
 20
 MR. BLACKWELL: About the jobs and all that.
 
 
 21
 THE COURT: But you did tell me that you were a maintenance man for the CHA, Chicago Housing Authority. Is that correct?
 
 
 22
 MR. BLACKWELL: Yes.
 
 
 23
 The court reiterated that Blackwell should seek clarification as needed: "As I say, if you don't understand any question I ask you, please ask me to repeat it again, and if you want to consult with your lawyer before you answer the question, feel free to do so. Just advise me, and I'll stop the proceedings."
 
 
 24
 The court then asked "are you satisfied with the efforts of you attorney in your behalf?" When Blackwell hesitated, the court inquired: "[d]o you understand what I'm saying?" After Blackwell responded "no," the court asked "[a]re you satisfied with your attorney's representation of you in this case?" Blackwell replied "[s]ort of," but had no specific complaints. He admitted that he had discussed the indictment and the plea agreement with his attorney, and he claimed to understand the charges against him.
 
 
 25
 The court then questioned Blackwell about the rights he waived by pleading guilty and about the voluntariness of his plea. In response to the court's questions, Blackwell provided "yes" and "no" answers. All the answers were appropriate to the questions asked.
 
 
 26
 The court also discussed sentencing issues. It informed Blackwell that parole had been abolished, that it could not promise a particular sentence under the Federal Sentencing Guidelines, and that it had the authority to depart from the Guidelines. Blackwell admitted that he understood these points. The court then asked Blackwell:
 
 
 27
 THE COURT: Do you understand, therefore, that the total potential sentence carried under the count of the indictment to which you would offer a plea of guilty is ten years to life imprisonment, a four million dollar fine, and a term of supervised release. Do you understand that?
 
 
 28
 MR. BLACKWELL: Repeat that over.
 
 
 29
 THE COURT: All right; the total potential sentence carried under the count to which you would offer a plea of guilty, namely Count Three, is ten years to life imprisonment, a four million dolalr [sic] fine, and a term of supervised release. Do you understand that?
 
 
 30
 MR. BLACKWELL: Yes.
 
 
 31
 After explaining the sentence, the court turned to the factual basis of the plea. It called for the government's version of the events then asked Blackwell to state in his own words "what you did as charged in Count Three of the indictment on August 7, 1991, in Chicago, as far as how you committed the offense." After Blackwell asked the court to "repeat that over," it asked specific questions establishing the offense conduct. Blackwell admitted to each element of the offense, and the court accepted his plea.
 
 II. ANALYSIS
 
 32
 Blackwell now contends the court should have conducted a more searching colloquy under Rule 11 of the Federal Rules of Civil Procedure[1]. He claims that his confusion at the hearing should have prompted more detailed questions from the court. He also believes that the court should have inquired about the nature of his learning difficulties[2].
 
 
 33
 A district court complies with Rule 11 if "in view of all the circumstances surrounding the plea, it is clear that the defendant was informed of his or her rights." United States v. Lumpkins, 845 F.2d 1444 (7th Cir.1988). The district court must ensure that the defendant understands his rights by questioning him "personally in open court." Fed.R.Civ.P. 11. The necessary depth and character of this questioning depends on many factors, including "the personal characteristics of the defendant, such as his age, education, intelligence, the alacrity of his responses, and also whether he is represented by counsel." United States v. Darling, 766 F.2d 1095, 1098 (7th Cir.), cert. denied, 474 U.S. 1024 (1985).
 
 
 34
 We applied this same standard in United States v. Lumpkins, 845 F.2d 1444, a case similar to Blackwell's. Lumpkins, like Blackwell, lacked substantial education and had "difficulty understanding and responding to the court's questions" at the plea hearing. Id. at 1449. Despite Lumpkins' confusion, we found his plea acceptable, because:
 
 
 35
 [T]he judge was unusually painstaking in his explanations to Lumpkins and his efforts to provide a record that Lumpkins understood the charges. When a question elicited a muddled response from Lumpkins, the judge repeatedly paused to explain his inquiry more clearly and to ensure that Lumpkins understood.
 
 
 36
 Id.
 
 
 37
 We decide Blackwell's case similarly. As in Lumpkins, the district court knew about Blackwell's learning disabilities and altered its plea colloquy accordingly. It questioned the attorneys about Blackwell's competency, invited questions from Blackwell, and stopped the colloquy periodically. Although the court, at times, employed somewhat formal sounding language and did not inquire into the nature of Blackwell's disabilities, the plea transcript demonstrates that Blackwell nonetheless understood his rights. He answered most of the court's inquiries appropriately. When he did not understand a question, he requested clarification, and the court dispelled his confusion. The court had no further duties under Rule 11.
 
 
 38
 We stress, however, that district courts should make consistent efforts to ensure that each defendant understands nature and consequences of his guilty plea and that the record reflects this understanding. We emphasize, as we have in prior cases, "that the district court, no matter how convinced it is that the defendant is knowingly and voluntarily pleading guilty, should completely and literally proceed step by step through the technical requirements of Rule 11." United States v. Gray, 611 F.2d 194, 202 (7th Cir.1979).
 
 
 39
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 We interpret Blackwell's arguments differently than the government. Blackwell does not argue that the court should have ordered a competency hearing sua sponte. Because Blackwell addresses only potential errors under Rule 11, we consider only those claims here. See United States v. Lumpkins, 845 F.2d 1444 (7th Cir.1988) (finding a claim similar to Blackwell's a cognizable challenge under Rule 11)
 
 
 [2]
 Although Blackwell never raised these challenges in district court, both parties have agreed that they have not been waived