Jesus Roberto **NEVAREZ–DIAZ,**
Petitioner–Appellant,

v.

**UNITED STATES of America,**
Respondent–Appellee.

No. 87–3092.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 1988.
Decided March 7, 1989.

Patricia Lee Refo, Jenner & Block, Chicago, Ill., for petitioner-appellant.

Patrick D. Hansen, Asst. U.S. Atty., James G. Richmond, U.S. Atty., Hammond, Ind., for respondent-appellee.

Before BAUER, Chief Judge,
FLAUM, and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

Petitioner-appellant Jesus Roberto Nevarez–Diaz ("Nevarez") is a Spanish-speaking Mexican citizen with a sixth-grade education. He neither speaks nor understands English. Nevarez and his brother, Candelario Nevarez–Diaz ("Candelario"), were arrested on September 27, 1985 by undercover Drug Enforcement Administration agent Albert Nedoff, Jr. During the course of that day, Candelario and Nedoff had negotiated by telephone the purchase of one half-kilogram of pure Mexican heroin. Candelario and Nedoff later met as agreed outside a certain building in Hammond, Indiana and went inside. With Nevarez present, Candelario weighed and completed the heroin sale to Nedoff, who then arrested the two brothers. In a subsequent search, authorities found a .22 caliber pistol affixed with a silencer in the room in which the transaction took place.

At his initial appearance on September 30, 1985, the magistrate appointed Eugene Velazco, Jr., a bilingual (English/Spanish) attorney, to represent Nevarez. Velazco entered his appearance as court-appointed counsel for Nevarez on October 3, 1985 and continued to represent Nevarez through his sentencing. On October 18, 1985, Nevarez was indicted on 21 counts involving the sale and distribution of heroin and the illegal possession of a firearm, to which Nevarez entered a plea of not guilty. On December 16, 1985, however, Nevarez appeared before the district court to change his plea to guilty. The events surrounding that change-of-plea hearing are central to this appeal.

After the Assistant United States Attorney summarized the government's evidence on the two counts to which Nevarez was pleading guilty—illegal sale and distribution of heroin and illegal possession of a firearm—the district court asked Nevarez whether he agreed with the government's summary of what he had done. Through his interpreter, Nevarez replied, "No, I'm

not in accordance." The following colloquy then took place:

THE COURT:

Q. With what do you disagree?

A. Because he says that I was in possession of an arm, and that I made the transaction of the amount of heroin. I was just there in the place, but I didn't —I didn't do any business with anybody nor did I have anything with me.

Q. Ask him to tell me about the weapon?

A. On my person.

Q. What about the weapon?

A. About the weapon? I didn't have any.

Q. He denies the fact that he was in possession of the gun described by the Government? Does he now deny that he was in possession of the gun that was described by Mr. Brattain?

A. Yes, I deny it, yes.

THE COURT: That's the end of it.

MR. VELAZCO: Your Honor, if I may—

(Conference between counsel and client not within hearing.)

A. Yes, it was there. The gun was in the—on the bed because I noticed it when they pick it up. I didn't know it was there, it was more or less of a distance of about twelve feet—a distance of twelve feet from me. Yes, I was involved—I was that distance from the bed.

THE COURT:

Q. And where was the gun?

A. On the bed they say.

Q. They say. Who is "they"?

A. Yes. I saw it when they searched everything. It was there.

Q. How about the other charge about the possession of, was it heroin?

MR. BRATTAIN: Yes, sir.

THE COURT:

Q. Possession of heroin, what do you know about that?

A. You mean the amount that they took into custody there?

THE COURT: Does he know anything about the heroin they took into custody?

A. No, I don't know anything.

THE COURT: Case goes to trial tomorrow morning. Sorry.

(Conference between counsel and Defendant, not within hearing.)

MR. VELAZCO: Your Honor, we have a problem with the language.

THE COURT: We'll take a recess then.

MR. VELAZCO: Okay.

THE INTERPRETER: I think he understood.

THE COURT:

Q. Did you understand what he said?

A. Yes.

MR. VELAZCO: Ask him is it—Ask him if in the plea that he's entering did he agree that he assisted his brother, the co-defendant, in the sale of 600 grams of heroin to the undercover agents?

A. Yes. Yes.

MR. VELAZCO: Was—did he assist—to his brother?

A. Yes. Yes, I was there. I was there present.

\* \* \* \* \* \*

MR. VELAZCO: Did you agree to assist your brother?

A. No. Never.

MR. VELAZCO: Then why was he there?

A. Because he told me to go since I never—I never say anything to him.

MR. VELAZCO: When he was there, he knew the transaction was drugs, is that right?

A. No. You know what, I noticed it when they took everything out.

MR. VELAZCO: Can we have—

THE COURT: Yeah, I don't have a lot of time to be honest with you. We are going to recess for about a half an hour.

After the recess, Nevarez told the court that he was in accordance with the government's summary of the evidence. His counsel, Velazco, explained to the court that

there was a problem with translation regarding constructive possession of the weapon and his involvement in the transaction which because of the way the law is written and translated instantly by the

translator, Defendant didn't get the concept of what was being said to him. So, as it was—he now apparently understands the whole situation.

When the court asked Nevarez if he had any doubt that he was guilty as charged of the two counts to which he was pleading guilty, however, Nevarez replied: "No, there is no doubt because I was present when the acts occurred." When asked how he pleaded to the distribution of heroin count, Nevarez answered: "Well, I feel—I feel guilty because I was there in the place where the act took place."

Apparently based on that "feeling," Nevarez pleaded guilty to the illegal sale and distribution of heroin and the illegal possession of a firearm counts and, based on this record, the district court accepted his plea. On February 4, 1986, the district court sentenced Nevarez to ten years in prison. Nevarez never raised an objection to the voluntariness of his plea or the competency of his counsel at the time of his sentencing, nor did he file or attempt to file a post-trial motion or a direct appeal after his sentencing. Less than four months later, however, on May 27, 1986, Nevarez filed a *pro se* "Petition to Set Aside Judgment and Sentence" pursuant to 28 U.S.C. § 2255, alleging that his guilty plea was involuntary because he did not fully understand the nature of crimes with which he was charged, and that he was denied effective assistance of counsel during his plea and sentencing proceedings. Specifically, Nevarez claimed in his petition that he believed that his mere presence at the scene of the crime was sufficient to establish his guilt, and that he did not learn otherwise until nearly four months after his sentencing.

After reviewing Nevarez's revised motion filed on November 3, 1986, the district court concluded that Nevarez's claims were not subject to summary dismissal. The court then appointed counsel to assist Nevarez and ordered the government to respond to his motion. On February 12, 1987, the court further directed the parties to brief the question whether, under *Williams v. United States*, 805 F.2d 1301 (7th Cir.1986), Nevarez had waived his

right to section 2255 relief. On August 3, 1987, the district court issued an opinion in which it concluded that the record of the change of plea hearing did not support Nevarez's guilty plea. Nevertheless, the district court held that Nevarez could have asserted his claims sooner, and ordered an evidentiary hearing to determine whether Nevarez could demonstrate cause for and prejudice resulting from his procedural default as required by *Williams*. On October 7, 1987, the district court conducted the evidentiary hearing, at which Nevarez, Candelario, and Velazco testified, and on December 8, 1987, the court denied Nevarez's section 2255 motion. According to the court, "[i]n order to show 'cause' for failing to raise his claims sooner, Nevarez was required to demonstrate that he received ineffective assistance of counsel either because Velazco failed to investigate a lack-of-intent defense or because Velazco failed to inform Nevarez of the relevant law pertaining to his case." Nevarez demonstrated neither, the court held.

This is Nevarez's appeal from the district court's denial of his section 2255 motion. Nevarez claims that the district court erred in concluding that he failed to demonstrate cause for and prejudice from his failure to argue earlier that he did not voluntarily plead guilty. He urges us to remand his petition to the district court for consideration of that claim on the merits.

We begin by agreeing with the district court that the record of Nevarez's change-of-plea hearing does not provide a sufficient basis for a finding of guilt. Without question, a guilty plea must be made voluntarily, knowingly, and intelligently, *United States v. Frye*, 738 F.2d 196, 198 (7th Cir. 1984); *United States v. Lumpkins*, 845 F.2d 1444, 1448 (7th Cir.1988), and a defendant who enters such a plea "must understand not only the nature of the charge against him or her, but also that his or her *conduct actually falls within the charge.*" *Frye*, 738 F.2d at 199 (emphasis added). For these reasons, Rule 11 of the Federal Rules of Criminal Procedure directs the district judge to inquire on the record "whether a defendant who pleads guilty

understands the nature of the charge against him and whether he is aware of the consequences of his plea." *McCarthy v. United States*, 394 U.S. 459, 464, 89 S.Ct. 1166, 1169, 22 L.Ed.2d 418 (1969). The tone, length, and particularity of the judge's colloquy with the defendant will vary with the circumstances, of course, *see Lumpkins*, 845 F.2d at 1448, but the judge must

> satisfy himself that there is a factual basis for the plea. The judge must determine "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."

*McCarthy*, 394 U.S. at 467, 89 S.Ct. at 1171 (citations omitted). To the extent the district judge exposes the defendant's state of mind *on the record*, he or she fulfills the purposes of Rule 11, which are to "assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary," and "to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." *Id.* at 465, 89 S.Ct. at 1170.

■ Against this background, Nevarez's Rule 11 hearing clearly was defective. Although the district judge did engage Nevarez in more than just formal or cursory dialogue and did, to a large extent, expose Nevarez's state of mind, the record reveals plainly that Nevarez either misunderstood the nature of the crimes with which he was charged or failed to realize that his mere presence at the scene of the crime was insufficient to establish his guilt. As the district court itself recognized when it first considered Nevarez's section 2255 motion.

[e]ven after the half-hour recess, when Nevarez's attorney supposedly informed

him on the theory of constructive possession, Nevarez never admitted that he knew that there was a gun in the bed where he sat or that drugs were being traded in the same room. When asked by the court if he had any doubt that he was guilty, Nevarez responded: "No, there is no doubt because I was present when the acts occurred." Then when asked how he would plead to the distribution of cocaine [sic] charge, Nevarez replied: "Well, I feel—I feel guilty because I was there in the place where the act took place."

*Thus, Nevarez never admitted to anything beyond his mere presence at the scene of the crime; he never admitted that he knew what was happening. The record here ... does not provide a sufficient basis for a finding of guilt.*

(Emphasis added.) This was a clear-cut Rule 11 violation. We cannot understand how the district court could have accepted Nevarez's plea, especially in light of Nevarez's limited education and inability to speak English.

■ In addition, the conduct of the prosecutor also troubles us. Although the primary obligation to ensure a valid Rule 11 hearing resides with the district court, we have emphasized that the prosecutor who accepts a plea on behalf of the government also has a responsibility to assure that a plea hearing satisfies the requirements of Rule 11. *See United States v. Fountain*, 777 F.2d 351, 355 (7th Cir.1985). The prosecutor, of course, must put his or her specific case against the defendant into the record during the Rule 11 hearing to ensure that there is a factual basis for the plea. *Id.* Needless to say, the prosecutor, then, is in a prime position to recognize whether the defendant understands and has admitted to committing the crime made out by the government's case. If it is unclear during the Rule 11 hearing whether the defendant understands or has admitted to the government's charges, the prosecutor, as much as the court, should be unwilling to accept the defendant's plea. In short, the government is in a position to ensure that the guilty plea it obtains will

not be vacated in a post-conviction attack. *See id.* at 356. Nevarez's plea hearing begged for such an attack, but the prosecutor sat on his hands.

█ Such a blatant Rule 11 violation does not, however, translate into automatic victory for Nevarez. In *Norris v. United States,* 687 F.2d 899 (7th Cir.1982), we held that a defendant may not raise on collateral attack even constitutional claims[1] that could have been raised earlier, unless the defendant can demonstrate cause for and prejudice resulting from the omission. In *Williams v. United States,* 805 F.2d 1301, 1303–06 (7th Cir.1986), we made clear that the *Norris's* "cause and prejudice" approach applied as well to federal habeas petitioners convicted by way of a plea agreement. Thus, if Nevarez had an opportunity to raise earlier the issues he now poses and he failed to do so, he must show cause for and demonstrate prejudice from his failure to pursue those opportunities.

The district court found that Nevarez could have raised his claims on three earlier occasions: in a presentencing motion under Fed.R.Crim.P. 32(d); in a motion for correction or reduction of sentence under Fed.R.Crim.P. 35(b); or on a direct appeal from his conviction. The court, therefore, turned to the question whether Nevarez could demonstrate "cause and prejudice." The court held that "[i]n order to show 'cause' for failing to raise his claims sooner, Nevarez was required to demonstrate that he received ineffective assistance of counsel either because Velazco failed to investigate a lack-of-intent defense or because Velazco failed to inform Nevarez of the relevant law pertaining to his case." *See Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (noting that ineffective assistance of counsel can constitute "cause" for a procedural default). After conducting an evidentiary hearing, the district court found that Nevarez failed to establish that Velazco was

remiss in his duties to investigate or inform, and concluded that "[b]ecause Nevarez failed to demonstrate ineffective assistance of counsel, he did not establish cause for failing to raise his claims sooner."

█ Although Nevarez contests vigorously and at times persuasively the district court's conclusion that Nevarez could have raised his claims in a Rule 35(b) motion or on direct appeal, we need not thrash through that thicket, for in our view the district court, on these unusual facts, erred in concluding that Velazco's assistance was constitutionally sufficient. As set forth above, the district court focused his ineffective-assistance inquiry on the substance of Velazco's advice to Nevarez *outside* the courtroom; we think the better focus is on what occurred during the Rule 11 hearing itself. Viewed in this manner, it is difficult to excuse Velazco's highly questionable conduct as reasonably effective assistance.

From the very beginning of the Rule 11 colloquy, Nevarez refused to admit to any conduct more serious than merely being present in the room when Candelario consummated the drug sale with DEA agent Nedoff. Even Velazco's own attempt to question Nevarez elicited nothing more than Nevarez's admission that he was present when the transaction took place. If anything, as the above portion of the record shows, Velazco's questioning adds strength to Nevarez's claim that the plea was invalid. Moreover, whatever "problem with the language" existed when Nevarez repeatedly refused to admit essential elements of government's case, it was hardly resolved during the half-hour recess. All Nevarez did after the recess was return and, *on the record,* reiterate that he thought he was guilty because he was present when the drug transaction took place. Thus, although Velazco may have investigated and informed Nevarez of the crimes with which he was charged, the record clearly reflects that Nevarez never

---

1. On a motion such as Nevarez's brought pursuant to section 2255, relief is available for Rule 11 violations only if the error of law is jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice. *United States v. Frye,* 738 F.2d

196, 201 n. 6 (7th Cir.1984). Nevarez satisfies this test, however, because a guilty plea made unknowingly or unintelligently is involuntary and unconstitutional. *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976).

really understood the nature of those charges—that or he never truly wanted to plead guilty.

An attempt by an attorney to secure a guilty plea on behalf of a client despite that client's obvious misunderstandings and reluctance to so plead does not strike us as reasonably effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The importance of the plea hearing and the purposes and explicit requirements of Rule 11, in our view, preclude such a conclusion. Moreover, the deficient performances of Velazco, the court, and the prosecutor together added up to a legal breakdown which any one of the three probably could have prevented. We think that this rare (we hope) occurrence enables Nevarez to establish cause for failing to raise his claims sooner. It would be unrealistic to fault Nevarez for Velazco's failure to raise later issues surrounding Velazco's own professional conduct. *See Williams,* 805 F.2d at 1309; *Bush v. United States,* 765 F.2d 683, 684 (7th Cir.1985), *cert. denied,* 474 U.S. 1012, 106 S.Ct. 542, 88 L.Ed.2d 472 (1985). The record also convinces us that, because of these unusual facts, Nevarez should not be penalized for not raising the invalidity of his plea until he filed his original section 2255 petition, which he did less than four months after his sentencing.[2]

■ As for the prejudice component of the *Williams* test, the district court, in its first opinion dealing with Nevarez's revised petition, found that "Nevarez's assertions that, but for his attorney's advice, he would not have pleaded guilty and would have gone to trial, satisf[ied] the prejudice showing." Although the court stated in its second opinion denying Nevarez's petition that Nevarez ignored the prejudice prong of the *Williams* test, that statement makes little sense in light of its first opinion and, in any event, we think the court got it right the first time. In our view, Nevarez has demonstrated adequately that his attorney's—

and we might add the court's and the prosecutor's—failings "so infected his sentencing hearing that it resulted in a fundamental miscarriage of justice." *United States v. Kovic,* 830 F.2d 680, 685 (7th Cir.1987).

In short, we hold that the district court erred in denying Nevarez's section 2255 motion on the grounds that Nevarez failed to show cause for and prejudice resulting from his failure to raise his claims sooner when he had an opportunity to do so. In this unusual case, Nevarez is entitled to consideration of the merits of his claim that his guilty plea was involuntary.

REVERSED AND REMANDED.

---

2. Indeed, this may be the rare case where the principles of the cause and prejudice standard must yield to fundamental notions of justice.

*See Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1578, 71 L.Ed.2d 783 (1982); *Clay v. Director,* 749 F.2d 427, 433–34 (7th Cir.1984).