In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 02-1240 and 02-1508

WILLIE P. COLEMAN, JR.,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 00 C 76—**Rudolph T. Randa**, *Chief Judge*.

ARGUED DECEMBER 2, 2002—DECIDED FEBRUARY 7, 2003

Before BAUER, POSNER, and ROVNER, *Circuit Judges*.

BAUER, *Circuit Judge*. Petitioner-Appellant Willie P. Coleman, Jr. appeals the district court's order denying his § 2255 motion to vacate, set aside, or correct his sentence. He argues that his guilty pleas were not intelligently and voluntarily entered as a consequence of the ineffective assistance of his counsel. Because we believe Coleman received effective assistance of counsel throughout the proceedings and intelligently and voluntarily entered his guilty pleas, we affirm the sentence imposed below.

## I.  BACKGROUND

Willie Coleman was indicted on April 8, 1997, after the government recovered 1370 grams of powder cocaine, $49,162 in United States currency, drug paraphernalia, and a loaded handgun from his Milwaukee home. This was followed by a superseding indictment on May 28, 1997. After the district court denied various motions, the case, originally set for trial, was set for a change of plea hearing. On September 19, 1997, Coleman entered a conditional plea to the six-count superseding indictment that charged him with multiple drug-trafficking offenses.

The parties attempted to devise a negotiated plea. The government gave Coleman two separate plea agreements which he rejected. When Coleman came to the change of plea hearing on September 17, there was no agreement in place. At the hearing, defense counsel expressed a willingness to enter a conditional plea; the government acquiesced, assuming the conditional plea was to all six counts. The district court approved the idea of a conditional plea and asked the government if it would accept the plea agreement. The prosecutor responded that the plea agreement did not include all six counts in the indictment, but that the other general provisions of the agreement were acceptable. This was highlighted in the following colloquy:

> THE COURT: [T]he Court will proceed to take the plea. And there is no—I take it no disagreement that the conditions—and the understanding, of course, that the Government is not waiving its objection to the Court's ruling relative to this conditional plea, but any of the other conditions in that are—and agreements are still going to be observed in the Plea Agreement as it was originally submitted?

> THE GOVERNMENT: Other than the charges to which the Defendant is pleading guilty. Is that the

question? Are the other factors that are set forth in the Plea Agreement still applicable? Is that your—is that what you're asking me?

THE COURT: Yes.

THE GOVERNMENT: Yes.

One provision included in the plea agreement involved a stipulation regarding relevant conduct which stated:

> That pursuant to Sentencing Guidelines Manual, Section 1B 1.3, the sentencing judge will consider not only the weight of the drugs alleged in the offense, to which the defendant is pleading guilty, but also the weight of any other drugs that were involved as part of the same course of conduct or common scheme or plan as the offense of conviction; and the judge will use the total weight of the drugs involved in calculating the guideline range, even if not alleged in the offense of conviction; the parties stipulate that the weight of the drugs for the purpose of calculating the guideline range includes 3 kilograms of cocaine relative to the defendant's conduct in or around March 1997, and an additional 14 ounces as a historical amount;

After this exchange between the court and the government, the district court advised Coleman of the statutory penalties for the crimes he was being charged with, asked him if he understood that he could still go to trial, and whether there was anything outside of the plea agreement that he had been promised. Coleman responded that he understood everything, that he had not been threatened or promised anything, and that he had nothing to discuss with his attorney or the court. Coleman proceeded to plead guilty and the court accepted the plea. The written plea agreement which had been the subject of repeated negotiations was never executed by the parties nor filed with the court.

At the sentencing hearing, the prosecution proffered that Coleman's relevant conduct involved 11 kilograms of cocaine. The district court accepted the government's position. On December 12, 1997, the district court sentenced Coleman to 135 months in prison, a fine of $3,000, 5 years of supervised release, and a forfeiture of $49,162 in drug proceeds.

Coleman appealed the judgments of conviction on various grounds he preserved for appeal. We affirmed the conviction on July 16, 1998. *United States v. Coleman*, 149 F.3d 674 (7th Cir. 1998). On January 5, 2000, Coleman moved pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. Coleman argued that he had not been effectively represented and that his guilty plea was not voluntarily and intelligently entered. On December 6, 2001, the district court denied Coleman's petition. A week later, Coleman filed a motion for reconsideration and a supplement to his § 2255 motion.

In its opposition to Coleman's motion, the government attached affidavits of Coleman's trial counsel. It was through these affidavits that Coleman learned, for the first time, that his lawyer believed the government had erred when it failed to note that it would not be bound by the weight stipulation. Despite this newly discovered information, the district court denied the motion for reconsideration. The district court granted Coleman's motion for a certificate of appealability on the issue of whether his counsel was ineffective at sentencing but denied Coleman's motion to include the issue of whether his guilty plea was not voluntarily and intelligently entered. On June 25, 2002, we granted Coleman's motion to amend the certificate of appealability to include the issue of whether his counsel was ineffective during his plea hearing and whether, as a result of this deficient performance, his plea was involuntary.

## II. ANALYSIS

In this appeal, Coleman contends his counsel was ineffective at both the plea hearing and at sentencing while the government argues that counsel's actions were entirely reasonable. Like two ships that pass in the night, both parties focused on entirely different matters, failing to address the core arguments of their respective opponent. Nevertheless, we first examine Coleman's ineffective assistance claim as it relates to counsel's performance at the plea hearing. We will then consider Coleman's claim that his counsel's assistance was ineffective at his sentencing hearing. We review a district court's ruling on ineffective assistance of counsel *de novo* under the principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

### A. *Ineffective Assistance of Counsel at the Plea Hearing*

*Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985), held that the *Strickland* analysis applies to counsel's conduct during the pleading phase. To mount a successful claim that counsel was ineffective at the pleading stage, Coleman must first show his attorney performed in a deficient manner, *Strickland*, 466 U.S. 668, 687, and then prove that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. Our scrutiny of counsel's performance is highly deferential. *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990). Coleman also has a difficult burden of proof as he must overcome the strong presumption that his attorney's performance was effective. *Chichakly v. United States*, 926 F.2d 624, 627 (7th Cir. 1991). To meet this burden, Coleman must establish specific acts or omissions of his counsel which constitute ineffective assistance. We then determine whether these acts or omissions were made outside the

wide range of professionally competent assistance. *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000). To find that Coleman's guilty plea was involuntary as a result of ineffective assistance of counsel, his attorney must have given advice that falls below prevailing professional norms. *Chichakly v. United States*, 926 F.2d 624, 628 (7th Cir. 1991).

Coleman offers little as to why he was denied the effective assistance of counsel during the plea colloquy. Moreover, he fails to apply the *Strickland* test, making only a passing reference to the case. Coleman's treatment of *Strickland* and its progeny as negligible points of law cannot be emphasized enough. This is especially true, given his approach of relying on conclusory assertions in lieu of any reasonable *Strickland* analysis.

Despite these analytical missteps, Coleman attempts to establish a specific omission of his counsel which constitutes ineffective assistance. Specifically, he argues that defense counsel erred when he failed to speak to Coleman after the prosecutor neglected to include the weight stipulation as one of the provisions in the plea agreement to which the government would not be bound. According to Coleman, defense counsel was either not paying attention during the exchange between the court and the government or counsel believed that the prosecutor's omission was inadvertent. He contends that either circumstance constitutes ineffective assistance of counsel. Coleman contends that the failure of counsel to fully inform him that there would not be a limit on the drug weight resulted in a guilty plea entered with a substantial misunderstanding of the consequences of his plea.

Coleman bases his ineffective assistance claim on what is essentially a phantom mistake with no adverse consequences to him. During the plea colloquy, it was a foregone conclusion that Coleman wanted to plead guilty.

The record clearly supports this finding. In his affidavit, Coleman's defense counsel stated that he repeatedly told Coleman that he was in severe jeopardy of a lengthy sentence unless the amount of drugs involved in the case was limited. He swore that he explained to Coleman that he could achieve such a result only by a plea of guilty. Coleman's defense counsel also stated that he advised his client that unless there was a plea agreement, his sentence would be longer and he would lose point reductions by not pleading guilty.

Apparently, Coleman took this advice to heart. The case was twice scheduled for trial, however, Coleman eventually requested a change of plea hearing. Considering the underlying circumstances of the case, it would seem that Coleman's best option was to plead guilty. This would be true regardless of how the prosecutor answered the question about the plea provisions. While her answer could, at its worst, be considered vague, there was nothing fallacious about the statement or the underlying plea provisions.

The strategy of Coleman's counsel was perfectly reasonable. He tried to make the best of a bad situation for his client by attempting to minimize the sentence and help effectuate an earlier release. In essence, Coleman got exactly what he bargained for. As we explain below, Coleman's claim is based on the faulty premise that paragraph 6(h) placed a cap on Coleman's relevant conduct. Counsel's reading that paragraph 6(h) was not a cap gave effect to the plain meaning of the words, and thus, is correct. Given his interpretation of this unambiguous language, counsel had little reason to speak with Coleman about it. Considering the "conduct from counsel's perspective at the time," *Strickland*, 466 U.S. at 689, we believe counsel's actions fall within the wide range of reasonable professional assistance. Because Coleman failed to meet the requisite burden of proof with regard to

the first prong of *Strickland*, we are required to go no further in our analysis. *See Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001).

We now briefly address a separate argument by Coleman that is intertwined with his ineffective assistance claim. Coleman says that the district court erred when it refused to consider a letter sent by the prosecutor to Coleman on August 11, 1997. Coleman argues the letter corroborates his interpretation that paragraph 6(h) was intended to be a cap on his relevant conduct. Coleman misconstrues the import of the letter. The district court found that the government wrote the letter to induce Coleman to accept the plea agreement and that his rejection of the proposal in the letter was a rejection of all of its inducements. There is little dispute as to what the letter intended. It unambiguously asserted that Coleman "would remain in the 'not less than two and not more than 3.5' kilogram range in the sentencing guidelines." We do not dispute Coleman's contention that this letter corroborates his interpretation of paragraph 6(h). However, once Coleman rejected the offer in the August 11, 1997 letter, the parties went back to the drawing board. Coleman cannot now retrieve any contemplated plea agreements to prove that the government maintained a certain tactical position throughout the negotiations.[1] Thus, the district court did commit clear error in its refusal to consider the government's letter.

---

[1] Coleman cites *United States v. Mankiewicz*, 122 F.3d 399, 403 (7th Cir. 1997), where we noted that, because plea agreements "implicate the deprivation of human freedom, the rules governing their interpretation, although having their roots in the principles of contract law, also acknowledge that concern for due process outweighs concern for freedom of contract." (internal quotes omitted). We do not stray from this proposition. However, no plea agreement was ever entered into.

*B. Ineffective Assistance of Counsel at Sentencing*

Coleman's claim of ineffective assistance of counsel is not confined to the plea phase of the proceedings. He also claims that his counsel's conduct during the sentencing hearing was ineffective assistance. The district court found that the unexecuted plea agreement did not contain a limit on the drug weight attributable to Coleman and that defense counsel's failure to object at sentencing was not ineffective assistance of counsel.

Our analysis of Coleman's claim of ineffective assistance at the sentencing stage is similar to our approach with regard to the plea hearing. For Coleman to prevail, he must first demonstrate that his counsel's performance fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 688, and that he suffered prejudice by the deficient performance. *Id*. As we previously noted, Coleman must show his counsel's representation fell below an objective standard of reasonableness. *Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2001). We measure reasonableness under the standard of prevailing professional norms. *Id*. To meet the prejudice prong of *Strickland*, Coleman must show that but for counsel's unprofessional error, the results would have been different.

Coleman contends the prosecutor had a commitment to honor the supposed stipulated cap on relevant conduct. Coleman concludes that the failure to object amounted to ineffective representation of counsel. It is unclear what basis defense counsel would have had for an objection. Counsel correctly interpreted the plain import of paragraph 6(h) and came to a plausible conclusion: the proposed plea agreement did not cap the relevant conduct; moreover there was no plea agreement; it had been rejected.

And, as we noted with his ineffective assistance claim at the plea phase, the difficulty Coleman faces is the

content of paragraph 6(h) of the plea agreement. If the paragraph in fact unequivocally limited the drug weight he might have some argument. However, the paragraph instead clearly set forth that the drug weight would include 3 kilograms, 14 ounces. There was not a single word or inference that suggested the relevant conduct was limited to this weight. It was reasonable for Coleman's counsel to conclude that there was no agreement between Coleman and the government regarding a drug weight cap.

The government argues that a provision intending to cap a drug amount should read "includes but does not exceed" or "is limited to" instead of "includes." We agree. The word "includes" does not suggest limitation. In fact, the word is defined "comprises as a part of the whole."[2] Given the context of the plea agreement and the underlying factual background, we cannot read the term "includes" to mean a limitation.

There is one final point we must address. Coleman attempts to manufacture an argument concerning an alleged breach of the plea agreement by the government. He contends that this breach resulted in an involuntary plea. This issue is not before this court. Coleman never raised the issue on direct appeal and thus his argument is procedurally defaulted. A § 2255 motion is not a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995). Accordingly, we AFFIRM the district court's order denying Coleman's motion for § 2255 relief.

---

[2]  Merriam Webster's Collegiate Dictionary 588 (10th ed. 1996).

ROVNER, *Circuit Judge*, concurring in part. I agree with my colleagues that Willie Coleman has not demonstrated that his trial counsel was constitutionally ineffective and I join the opinion to that extent. I write separately, however, because I cannot agree that what transpired at Coleman's change of plea hearing was a mere "phantom mistake." I would rest the decision instead on the narrower ground that Coleman has not demonstrated that he was prejudiced by the performance of his counsel at his change-of-plea hearing.

What happened here was that the government extended a plea offer in which it would promise to dismiss five of the six changes in the indictment, recommend a two-level reduction to Coleman's base offense level for acceptance of responsibility, and recommend that he receive a sentence near the lower end of the applicable guideline range. The offer also provided that the government would stipulate for sentencing purposes that the amount of cocaine involved in the offense "includes three kilos fourteen ounces."

Prior to this offer, Coleman had moved to exclude from evidence the cocaine seized during his arrest and some statements he made to the police. The district court denied the motion, however, and in light of that ruling Coleman's attorneys advised him that it was likely he would be found guilty if he chose to stand trial. Coleman's best option for limiting his criminal liability and reducing his prison sentence, according to his counsel, was to negotiate a plea in which the government would agree to cap the amount of cocaine involved in the offense. It appears from this record that Coleman appreciated counsel's advice. But Coleman harbored a deep-felt belief, however misguided, that the court's ruling on his suppression motion was incorrect. He thus rejected his counsel's advice and hence the government's offer, insisting as a matter of personal principle on appealing the denial

of his suppression motion, a right he would lose if he pleaded guilty unconditionally. Defense counsel then advised the prosecutor that although Coleman did not wish to go to trial and intended to plead guilty, he wanted to enter a conditional plea and preserve his right to appeal.

With no further response from Coleman, a few days before the change-of-plea hearing, the government sent Coleman a letter to entice him to accept the plea offer and avoid trial. In addition to the promises set forth in the offer, the government sweetened the deal by offering to recommend that Coleman receive an acceptance of responsibility reduction of three rather than two offense levels, and to cap the amount of cocaine involved in the offense at "not less than two and not more than 3.5" kilograms. But in the letter the government refused to agree to a conditional plea as part of the bargain, explaining that its offer "did not contemplate continued litigation" and that it would not dismiss some of the charges nor recommend acceptance of responsibility credit should Coleman insist on a conditional plea. Defense counsel reviewed the government's letter with Coleman, but Coleman insisted on preserving his right to appeal.

At the change-of-plea hearing, counsel explained to the judge that he had spent "hours" discussing the government's offers with Coleman, and that Coleman wanted to sign the plea agreement, but could not because he did not want to waive the right to appeal the denial of his pretrial motions. Defense counsel further represented that Coleman understood that "it would be wrong for him to go to trial," because, among other things, the statements that he had unsuccessfully sought to suppress were strong evidence of his guilt, and because he would certainly lose the opportunity to reduce his sentence for cooperating with the government or accepting responsibility. Defense counsel then suggested that the court allow Coleman to enter a conditional plea, and he also appears

to have suggested that Coleman also be allowed to accept the plea offer:

> DEFENSE COUNSEL: . . . So we ask the Court in its discretion to allow Mr. Coleman to sign the Plea Agreement which we have before us, which has been gone over with him chapter and verse, line by line, word by word, concept by concept, and still maintaining his right to raise legal issues in the Court of Appeals. . . .

In response, the prosecutor reiterated her view that the government's offer did not contemplate Coleman preserving his right to appeal, but that if Coleman persisted on entering a conditional plea she would not object so long as Coleman pleaded guilty to all six counts of the indictment. The prosecutor added that, as she had stated in the letter, she also would not recommend the three-level reduction for acceptance of responsibility.

Defense counsel replied that in his view the government's conditions on consenting to a conditional plea were not important. He explained that whether Coleman pleaded guilty to a single charge of conspiracy to distribute cocaine, or the same charge plus five additional cocaine distribution charges, ultimately would not effect the length of time he spent in prison. In addition, defense counsel noted that any stipulation by the government as to the maximum amount of drugs involved in the offenses could not bind the court or supercede the court's duty to make independent findings.

The district court was willing to allow Coleman to enter a conditional plea. Defense counsel then asked for what appears to be clarification from the judge whether Coleman could also sign the plea agreement, perhaps as modified by the prior conversation:

> DEFENSE COUNSEL: Your Honor, having said that, we can proceed with—if [the prosecutor] wishes—with what the Court has said, we would graciously sign the

Plea Agreement. If not, then I can assure the Court that all of the rights enumerated in the Plea Agreement and all other concepts have been gone over with Mr. Coleman, and he will come forth and swear and answer whatever questions the Court has referenced now, his conditional plea—that you referenced now as a conditional plea.

Following this, the judge, defense counsel, and the prosecutor engaged in the following colloquy, part of which has been reproduced in the majority's opinion:

THE COURT: The Court having made that ruling, is the Government prepared, then, to offer that Plea Agreement to the defense?

THE GOVERNMENT: Well, the Plea Agreement anticipated the Defendant pleading guilty to only one of the charges. I think the government's position is—and I certainly don't quarrel with the Court's ruling—I think it's appropriate, but that if the Defendant is going to plead guilty, he should plead guilty to all of the counts set forth in the Superceding Indictment. So insofar as the other aspects of the Plea Agreement in terms of what rights he has given up and some of the other general provisions in there, I have no problem with [defense counsel] asserting that he has explained those to the Defendant. But the government is not offering the Plea Agreement in exchange for a conditional plea. I agree and I have no quarrel with his ability to do that, but I believe it should be to the Superceding Indictment.

DEFENSE COUNSEL: If that's what we must do, we will enter a plea of guilty with the understanding . . . that what we are doing is entering a plea of guilty to the 6 counts in the Superceding Indictment . . . with the understanding that Mr. Coleman is entering . . . a conditional plea. . . .

THE COURT: . . . That being said, then the Court will proceed to take the plea. And there is no—I take it no disagreement that the conditions—and the understanding, of course, that the Government is not waiving its objection to the Court's ruling relative to this conditional plea, but any of the other conditions that are—and agreements that are going to be observed in the Plea Agreement as it was originally submitted?

THE GOVERNMENT: Other than the charges to which the Defendant is pleading guilty. Is that the question? Are the other factors that are set forth in the Plea Agreement still applicable? Is that your—is that what you are asking me?

THE COURT: Yes.

THE GOVERNMENT: Yes.

THE COURT: Okay. The Court would like to see a copy of that Plea Agreement, then, just because I haven't received a copy of it since we had this problem outstanding.

THE GOVERNMENT: Except if I could just interpose one more thing. The Government would not be recommending a decrease for acceptance of responsibility. That's a point on which [defense counsel] and I differ.

It is true that a plausible interpretation of the above (the view taken by the government and the majority) is that the prosecutor simply misspoke—that what she really meant to say was that the plea offer was dead and that the only "factors set forth in the Plea Agreement" still applicable to Coleman's plea were the boilerplate provisions included in the written offer to ensure that Coleman's decision to accept the agreement was knowing and voluntary, *e.g.,* Fed. R. Crim. P. 11(c). But an equally plausible interpretation is that which Coleman presses in this appeal, that his counsel and the government

reached an oral agreement containing some but not all of the terms of the second plea offer as modified by the terms set forth in the government's letter.

This concerns me because the decision whether to accept or reject any plea was only Coleman's to make—counsel could not make it for him without consultation. *See Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986). Although I am confident that defense counsel did not believe that they had unexpectedly wheedled a deal out of the prosecutor—a "Eureka!" moment as the parties put it—there is nothing in this record addressing how defense counsel reconciled their beliefs with what was said at the hearing. Considering the ambiguity of the colloquy, counsel's apparent request to allow Coleman to accept the agreement and receive the benefit of a conditional plea, and the prosecutor's concession that her response was "improvident" and did not reflect what she meant, it was unreasonable in my view for counsel to proceed without first consulting Coleman to make sure he understood that all he had obtained was the conditional plea and nothing more. *See Nevarez-Diaz v. United States*, 870 F.2d 417, 423 (7th Cir. 1989).

If the reasonableness of counsel's performance was the only issue standing between Coleman and habeas corpus relief, on this record I would remand the issue to the district court for further proceedings. But it is not the only issue, and I must concur with the judgment because I am not persuaded that Coleman has demonstrated prejudice from any deficiencies in counsel's performance. To satisfy the prejudice requirement in the context of guilty pleas, Coleman had to demonstrate that there existed a reasonable probability that, but for counsel's errors, he would not have entered a plea of guilty and would have insisted on a trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Coleman asserts that he would not have pleaded guilty had

his trial attorneys explained to him that they did not believe, contrary to his own understanding, that he and the government had reached an oral plea agreement embodying the offer to cap the amount of cocaine. But defense counsel's representations to the judge during the change-of-plea hearing made it quite clear that Coleman was aware of the perils he faced if he went to trial, and because of that he intended to plead guilty so long as he could enter a conditional plea, which the court allowed. *See United States v. Standiford*, 148 F.3d 864, 868-69 (7th Cir. 1998) (record created at a Rule 11 colloquy is accorded a presumption of verity; district court may hold defendant to admissions made at the hearing). Also, in his § 2255 motion Coleman averred that "Had I known that the government would argue for relevant conduct between 5 and 15 kilograms of cocaine, I would not have entered the guilty plea as I did." The statement is just equivocal enough to suggest that Coleman might only have attempted to strike a better bargain with the government, not proceed to trial. *See Tezak v. United States*, 256 F.3d 702, 713 (7th Cir. 2001). But even if we read it as an assertion that Coleman would have insisted on a trial, without more the statement is not enough to establish prejudice under our cases. Rather, Coleman had to identify some evidence supporting his claim that the outcome of the proceedings would have been different. *See id.*; *Gargano v. United States*, 852 F.2d 886, 890 (7th Cir. 1988); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986); *see also Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998); *id.* at 1049-50 (Rovner, J., concurring). Because he has not, I respectfully concur in the judgment.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*