Docket No. 95043–September 2003–Agenda 14.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MELVIN HENDERSON, Appellee.

Opinion filed March 18, 2004.

JUSTICE RARICK delivered the opinion of the court:

In this appeal, we are asked to address an issue of first impression, ostensibly ripe for review. The issue, as framed by the parties, is whether the circuit court abused its discretion in refusing to consider the merits of a “negotiated plea agreement” the parties purportedly presented after the expiration of the court’s plea cutoff deadline. However, having carefully reviewed the record on appeal, we find nothing therein which would indicate that the parties before the circuit court had actually reached an agreement or that they ever attempted to present such an agreement to the circuit court. Therefore, whether or not we believe that a court abuses, or abdicates, its discretion when it refuses to consider a negotiated plea agreement presented by the parties beyond a deadline set by the court, we have no occasion in this case to address the issue. Consequently, without reaching the issue the parties would have us address, we reverse the judgment of the appellate court (334 Ill. App. 3d 290) and affirm that of the circuit court of Rock Island County.

BACKGROUND

On November 26, 1999, defendant, Melvin Henderson, was charged by information with one count of unlawful possession of a controlled substance with the intent to deliver, in violation of section 401(c)(2) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(2) (West 2000)). Specifically, the information stated that “defendant knowingly possessed, with the intent to deliver to another, one or more grams but less than fifteen grams of a substance containing cocaine, a controlled substance.” A violation of section 401(c)(2) is a Class 1 felony.

On January 18, 2000, defendant appeared in court and pled not guilty to this charge. In a written order entered on January 18, the circuit court set March 3, 2000, as the date for a pretrial conference, and March 20, 2000, as the date for defendant’s trial. In this order, the court also set March 16, 2000, as the “final day for presenting a negotiated plea.”

During the March 3 pretrial conference, defendant informed the court that he wished to discharge his attorney and retain new defense counsel. Defendant’s new counsel appeared on defendant’s behalf during this hearing. He reported that he had just been retained by defendant and had reviewed some of the discovery in the case. Defense counsel informed the court that, during his examination of the case file, he had come across an “offer letter” from the prosecutor, wherein the terms of a negotiated plea of guilty were set forth. Defense counsel stated he was “not prepared to accept the offer” because he was still investigating the case. The circuit court then ruled that it would retain March 16 as the “final” plea date, but would entertain a motion for continuance if defense counsel was not ready for trial. On March 7, 2000, defendant’s original attorney formally withdrew from this case, and defendant’s new counsel was substituted.

The parties returned to court on March 16, 2000. The record reflects that the circuit court stated, “this matter comes on today for a plea.” In open court, defendant stated that he did not wish to enter a plea and demanded a trial by jury. During this hearing, defense counsel also presented a motion for continuance, to which the State had no objection. The circuit court granted the continuance, and set defendant’s trial date for April 17, 2000. The circuit court also set March 31, 2000, for a pretrial hearing, and April 13, 2000, as the “final” date for consideration of a negotiated plea.

On April 13, the case was called for pretrial hearing; however, defendant failed to appear. Defense counsel informed the court that the parties had engaged in further plea negotiations and the prosecutor had made a “viable” offer which defense counsel wanted to discuss with defendant. The court adjourned the hearing until the afternoon.

The hearing resumed in the afternoon with defendant present. Defendant informed the court that he was dissatisfied with his attorney and wanted to replace him with yet another attorney. Despite defendant’s continuing suggestions that he might retain a different attorney, he ultimately proceeded through trial and sentencing without a change of counsel.

During the pretrial hearing, defense counsel informed the court that he had been told by the prosecutor that the State intended to file an amended information, reducing the charge against defendant from a Class 1 felony to a Class 4 felony. Counsel further informed the court that negotiations were ongoing between the parties:

“DEFENSE COUNSEL: Mr. Cooley [the prosecutor] and I have done some talking, and we’re working on negotiations, also. The State at this time was going to file an amended charge on this particular matter from a Class 1 to a Class 4.

* * *

As far as the negotiations go, Mr. Cooley and I have discussed relationship to the Class 4, be allowed a–Mr. Henderson was mentioning was of the negotiation, that Mr. Henderson has not accepted such negotiation. Gave me a counteroffer I which [
sic
] presented to Mr. Cooley. Mr. Cooley’s offer that we talked about this morning–

THE COURT: Mr. Henderson’s not accepting that offer?

DEFENSE COUNSEL: As of–Before we walked in the courtroom, no.”

The court then advised defendant that he had until the next day to think about the State’s offer. Apparently under the impression that the reduction of the charge was part of the negotiations, the court told defendant, “They’re offering to reduce this to a Class 4 felony instead of a Class 1.” When defendant inquired whether he had to plead guilty in order for the State to reduce the charge, the prosecutor intervened and clarified the State’s position: “I think regardless of what happens, him getting another lawyer, whether he pleads or not, State intends [to] file this motion to amend ***.” When defendant stated that he had thought the charge reduction was part of a negotiated plea, defense counsel stated, “No, it wasn’t.” The court reset the matter for the following day, April 14.

The next day, the parties again appeared and the State was granted leave to formally amend the charge against defendant to simple possession. The court advised defendant of the charge and the possible penalties upon conviction. The court then asked if there was a negotiated plea. Defense counsel responded, “There is an offer on the table, but it is not–has not been accepted by Mr. Henderson.” The court inquired as to the nature of the offer. The prosecutor in attendance advised the court, “Mr. Cooley offered a cap of four or two years DOC.” The court asked defendant, “And you don’t want to consider that?” Defendant responded, “No sir. No sir. Huh-uh.” Defense counsel explained, “The counteroffer was made, but Mr. Cooley did not accept that.” The court then stated, “Well, it’s set for jury trial Monday. Will the State be ready next week?” The prosecutor responded affirmatively.

On April 19, defendant’s jury trial commenced. 
Voir dire
 was conducted and a jury was selected. Prior to the delivery of opening statements, defendant expressed confusion with respect to his eligibility for an extended-term sentence and asked the circuit judge in open court (but outside the presence of the jury) to explain why he could be sentenced up to six years. Immediately thereafter, the following colloquy occurred:

“THE COURT: Well, you know, probably wasting our time talking because I’m not going to accept any negotiated pleas. So, even if you wanted to plead guilty I’m not going to accept it, because we picked the jury, and you had until last Friday to enter a negotiated plea. So, if you plead guilty you have to do it, and its an open plea, and I can give you up to six years. I’m not saying I’m going to do it. But, you have a right to plead guilty, but I’m not going to negotiate it. It’s not going to be for two or three years. All right.

DEFENSE COUNSEL: You understand what’s the Judge’s telling you?

THE DEFENDANT: You want me to take an open plea of six. If you do decide to plead it have to be an open plea of six.

THE COURT: Right, and it’s an open plea.

THE PROSECUTOR: Not to six years.

THE COURT: Then I could give you, if you plead guilty right now I would order a pre-sentence report *** [a]nd then we would set it for sentencing.

* * *

THE DEFENDANT: And that’s the only way you would be willing to accept anything if I take an open? Nothing other than that?

THE COURT: No. It’s too late. That’s the policy I have.

THE DEFENDANT: I know you said Friday. I thought when you said Friday, not trying to change the word around, I misunderstood. I understand you said Friday, that [the plea offer] was two years I think Friday.

THE COURT: I don’t know what it was.

DEFENSE COUNSEL: That was Thursday.

PROSECUTOR: I’m sure that was the offer on Thursday. I don’t recall what the offer was on Friday.

DEFENSE COUNSEL: Friday was the same thing.

* * *

THE COURT: You talk to [defense counsel]. If you want to plead open with no cap then I’ll take it. If you don’t then we’re going to trial.

DEFENDANT: I don’t want a trial. I don’t because I’m already guilty. I can see already. I’m trying to get around a trial. I’ll be willing to cop out, but I’m saying, I mean I don’t want a trial. I do not want a trial. I do not want a trial I know I’m going to lose.

DEFENSE COUNSEL: Then you have to plead guilty to the open charge, and then be separately sentenced where you face potential up to six years. Okay? That’s the whole thing right now.

THE COURT: You talk to [defense counsel]. We’ll be back in 10 minutes.

DEFENDANT: You won’t take two years right now?

DEFENSE COUNSEL: Judge will not take it.”

After a brief recess, defense counsel informed the court that he had again explained defendant’s options to him. Defendant then commenced an extended dialogue with the court, alternately asserting that he had been confused about his situation, while trying to bargain with 
the court 
as to what the court might accept as an appropriate sentence if defendant were to plead guilty. During this dialogue, the prosecutor was silent. The State did not offer to negotiate further, it did not ask the court for the opportunity to do so or protest the deprivation of such an opportunity, and it did not indicate that an offer was pending. Indeed, the State’s indifference is evident from the prosecutor’s prior statement: “I don’t recall what the offer was on Friday.” While the prosecutor stood by and said nothing, defendant tried to negotiate with the trial judge, as the following excerpts amply demonstrate:

“THE COURT: And, did you tell [defense counsel] you wanted to take two–

THE DEFENDANT: I said I wanted to take year and a half.

THE COURT: That’s not two years.

THE DEFENDANT: I’m saying he was supposed to ask them, and they never said nothing to me about nothing else.

DEFENSE COUNSEL: That was an offer turned down by Mr. Cooley Thursday.

THE DEFENDANT: I seen him Tuesday. I asked him to get a year and a day. That’s what I talked to him about Tuesday, and I asked him if he would ask the State’s Attorney if they give me a year and a day, and I never heard nothing else after that, because I know what they offered me already cap of four and a half, and they offered me two. I believe, Your Honor–

THE COURT: It’s too late right now. I mean the jury is sitting there and I want to get started with the case.

THE DEFENDANT: I’m willing. I’ll take two today.

THE COURT: No. That’s not agreeable. It’s too late to take two.

* * *

THE DEFENDANT: Take a cap of three.

 THE COURT: No.

THE DEFENDANT: You won’t take two years?

THE COURT: We’re done negotiating. I don’t know how many times I can tell you.

THE DEFENDANT: You won’t give me time to think? It’s just like no offer. I know it’s a cap of six now. I’m saying the two they offered me it wasn’t even an offer then.

DEFENSE COUNSEL: You rejected it by giving a counter offer.

THE DEFENDANT: I never said I didn’t want the two. You heard me I didn’t want to accept, nothing.

* * *

THE DEFENDANT: I said I’m willing to cop out if you’re going to be fair.

THE COURT: What do you mean I’m going to be fair? I’m not going to say I’m going to give you probation or two or three years. I may give you six years.

* * *

THE DEFENDANT: Not to no cap of six. Not for a cap of six. That’s too many.

THE COURT: Okay. Bring the jury in.”

Thereafter, the jury trial proceeded and defendant was ultimately convicted of unlawful possession of a controlled substance. The circuit court set defendant’s sentencing hearing for May 24, 2000.

On May 17, 2000, defendant filed a posttrial motion, asserting two grounds for error: (1) that the evidence failed to prove his guilt beyond a reasonable doubt; and (2) that the circuit court erred in not granting a pretrial suppression motion filed by defendant. The circuit court set a hearing for this posttrial motion on May 24, 2000, the same date set for sentencing.

When the parties returned to court on May 24, the circuit court first heard and denied defendant’s posttrial motion. Thereafter, the circuit court conducted a sentencing hearing. After listening to testimony in aggravation and mitigation, the circuit court sentenced defendant to an extended term of five years’ incarceration in the Illinois Department of Corrections and one year of mandatory supervised release. Defendant was also assessed a statutory fine of $500. The sentencing order was entered on June 6, 2000.

On July 5, 2000, defense counsel filed a motion for reconsideration. The motion alleged that the sentencing of defendant to a five-year term of incarceration was excessive in light of the fact that he possessed less than one-tenth of one gram of cocaine, which had been stipulated at the sentencing hearing to have a street value of $20. No action was taken on this motion.

On November 13, 2000, defendant filed a 
pro se
 petition for postconviction relief. In that petition, defendant alleged that his trial counsel had been ineffective for failing to file a motion for reconsideration, thereby forfeiting defendant’s appellate rights. Defendant also alleged that his five-year, extended-term sentence was void under the United States Supreme Court’s decision in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In an affidavit attached to the petition, defendant asserted that he had been offered a two-year sentence, but the circuit court had found he had “forfeited the opportunity to enter that plea due to *** indecisiveness.” Defendant’s affidavit states: “I tried to accept that plea right before my trial was to start, but the trial court expressed that the plea would not be accepted and that I could only plead at that point to conditions set up by the trial court, which was a sentencing cap. I did not really understand the offer from the court, which I recall as [
sic
] ‘a cap of one to three years, extendable to six.’ I did not understand that, so I did not enter a plea of guilty at that time.”

On January 11, 2001, the same judge who presided over defendant’s trial summarily dismissed defendant’s petition for postconviction relief. As part of the dismissal order, the judge noted that a motion for reconsideration had been filed but had not been heard. As part of the dismissal order, the judge directed that the motion for reconsideration be set for a status hearing so that it could be heard and decided. The judge also found that defendant’s 
Apprendi
 claim lacked merit. Following the dismissal of defendant’s petition for postconviction relief, a notice of appeal was filed on February 13, 2001.

On September 13, 2001, the circuit court held a hearing on defendant’s motion to reconsider. At that hearing, appointed counsel represented defendant. The record reflects that the motion had not previously been heard because defendant’s trial counsel had been suspended from the practice of law. The circuit court ultimately denied the motion to reconsider. On September 14, 2001, defendant filed a notice of appeal. On motion of defense counsel, the cases were consolidated on appeal.

With one justice dissenting, the appellate court reversed the judgment of the circuit court and remanded this cause for further proceedings. 334 Ill. App. 3d 290. The appellate court held that the refusal of the circuit court to consider defendant’s “negotiated plea” based on timeliness alone was an abuse of discretion. The court stated, “It does not appear from the record that the State had ever withdrawn the plea offer and no objection was made to defendant’s attempt to plead following jury selection.” 334 Ill. App. 3d at 292. We find it significant that the appellate court never identified the terms of the “negotiated plea” purportedly presented to the circuit court; nor did it explain how the State’s failure to participate in, or object to, defendant’s dialogue with the circuit court after jury selection equates to an agreement.

In any event, the majority proceeded to address the issue of first impression in Illinois. The majority observed that in decisions from other jurisdictions which have addressed this issue, two lines of authority have emerged. One line is represented by the Iowa Supreme Court’s decision in 
State v. Hager
, 630 N.W.2d 828 (Iowa 2001). In 
Hager
, the court reasoned that inflexible plea deadlines themselves eliminate the court’s exercise of discretion. The other line of authority is represented by 
People v. Jasper
, 17 P.3d 807 (Colo. 2001). There, the Colorado Supreme Court reasoned that plea deadlines are an integral part of the court’s case management authority and may be enforced where the parties have actual notice of the court’s practice and where exceptions to the deadline are permitted for good cause.

After considering the reasoning of both lines of authority, the appellate majority found the 
Hager 
decision to be more persuasive. The majority held that “rejecting a guilty plea solely because it was not tendered before the court-imposed deadline does not seem to be in the best interests of justice or of public policy concerning resolution of cases.” 334 Ill. App. 3d at 294. The appellate majority determined that strict enforcement of court-imposed plea deadlines would defeat these interests. 334 Ill. App. 3d at 295.

Under the circumstances of this case, the majority concluded that defendant’s “plea agreement” should have been considered on its merits. The majority states: “We cannot discern, and the State has not presented, any difference in added costs or taxing of resources that would justify addressing an open plea and refusing to even consider one that has been fully negotiated.” 334 Ill. App. 3d at 295. Therefore, the majority determined, the circuit court abused its discretion in refusing to “even consider the negotiated plea solely on timeliness grounds.” 334 Ill. App. 3d at 293.

In a special concurrence, Justice Lytton stated that, because the circuit court refused to entertain the plea, it did not exercise discretion, and therefore no deference is owed to the circuit court on this issue. Justice Lytton stated that “[w]hen a judge draws a strict time line after which he will not accept a guilty plea, it is an arbitrary, not a discretionary, act.” 334 Ill. App. 3d at 296 (Lytton, P.J., specially concurring).

In dissent, Justice Holdridge disagreed with the majority. In his view, docket management “is a legitimate concern resting within a trial judge’s sound discretion.” 334 Ill. App. 3d at 296-97 (Holdridge, J., dissenting). Accordingly, the dissent concluded that the circuit court properly exercised discretion in refusing to consider defendant’s untimely plea.

We granted the State’s petition for leave to appeal. 177 Ill. 2d R. 315(a).

ANALYSIS

There is no question that “[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called ‘plea bargaining,’ is an essential component of the administration of justice.” 
Santobello v. New York
, 404 U.S. 257, 260, 30 L. Ed. 2d 427, 432, 92 S. Ct. 495, 498 (1971). Like the United States Supreme Court, this court has a firmly rooted view that the plea-bargaining process, and the negotiated plea agreements that result from that process, are “vital to and highly desirable for our criminal justice system.” 
People v. Evans
, 174 Ill. 2d 320, 325 (1996). Although it is well settled in our jurisprudence that plea bargaining is to be encouraged, it is equally well established that a defendant does not have an absolute right to have a guilty plea accepted by the circuit court. 
Santobello
, 404 U.S. at 262, 30 L. Ed. 2d at 433, 92 S. Ct. at 498; 
People v. Peterson
, 311 Ill. App. 3d 38, 45 (1999). A circuit court may reject a plea in the exercise of sound judicial discretion. 
Santobello
, 404 U.S. at 262, 30 L. Ed. 2d at 433, 92 S. Ct. at 498; 
Peterson
, 311 Ill. App. 3d at 45; see also 134 Ill. 2d R. 402(d) (it is within the discretion of the circuit court to approve or reject a defendant’s guilty plea)). A decision of the circuit court with respect to the acceptance or rejection of a negotiated plea is reviewed for an abuse of discretion, and the judgment of the reviewing court will not be substituted for that of the trial court. 
Peterson
, 311 Ill. App. 3d at 45.

However, before we consider whether a court has abused its discretion in refusing to accept a negotiated plea agreement, there must 
actually
 
be
 an agreement that 
the parties 
have tendered to the court. In this case, the parties never tendered an agreement for the trial court’s consideration.

Although the application of contract law principles to plea agreements may require “tempering in some instances” in order to satisfy concerns for due process, plea agreements are nonetheless subject to traditional principles of contract law absent such concerns. See 
Evans
, 174 Ill. 2d at 326-27; 
People v. Bouie
, 327 Ill. App. 3d 243, 246 (2002); 
Coleman v. United States
, 318 F.3d 754, 759 n.1 (7th Cir. 2003); 
United States v. Muzika
, 986 F.2d 1050, 1054 (7th Cir. 1993) (the existence of a plea agreement is determined by ordinary contract principles of offer and acceptance). Pursuant to traditional principles of contract, the legal effect of a counteroffer is the rejection of a standing offer. 
Sharp Electronics Corp. v. Deutsche Financial Services Corp.
, 216 F.3d 388, 395-96 (4th Cir. 2000), citing Restatement (Second) of Contracts §36 (1981). A rejected offer cannot be revived by a later acceptance. See 
Sementa v. Tylman
, 230 Ill. App. 3d 701, 705 (1992); 
D’Agostino v. Bank of Ravenwood
, 205 Ill. App. 3d 898, 902 (1990); 
Sharp Electronics Corp.
, 216 F.3d at 396. When a defendant rejects a State offer, the parties go “back to the drawing board.” 
Coleman
, 318 F.3d at 759.

Clearly, on the day of defendant’s jury trial, there was no negotiated plea agreement presented by the parties for the court’s consideration. The parties comments at the April 14 pretrial hearing, and their conduct on the day of trial, amply illustrate this point.

 When the court asked during the pretrial hearing if there was a negotiated plea, defense counsel responded, “There is an offer on the table, but it is not–has not been accepted by Mr. Henderson.” When the court inquired as to the nature of the offer, the prosecutor in attendance advised the court, “Mr. Cooley offered a cap of four or two years DOC.” The court then asked defendant, “And you don’t want to consider that?” Defendant responded, “No sir. No sir. Huh-uh.” Defense counsel then explained, “The counteroffer was made, but Mr. Cooley did not accept that.” The court responded, “Well, it’s set for jury trial Monday. Will the State be ready next week?” The prosecutor responded affirmatively.

Defendant’s counteroffer operated as a rejection of the State’s offer. See 
Sharp Electronics Corp.
, 216 F.3d at 395-96. Defense counsel subsequently acknowledged as much on the day of trial when he told defendant, “You rejected [the State’s offer] by giving a counter offer.” The parties’ comments on April 14, 2000, indicate that negotiations had proved fruitless and the parties were ready to proceed to trial.

On the date of trial, the prosecutor expressed no interest in further negotiations with defendant. When defendant attempted to negotiate a plea agreement 
with the trial court
, the prosecutor expressed indifference, stating only, “I don’t recall what the offer was on Friday.” The prosecutor did not refer to the matter again. He did not ask the court for an opportunity to engage in further negotiations with defendant or indicate any willingness to do so. The prosecutor’s silence during the extended dialogue between the defendant and the court may have resulted from a willingness to accept the trial court’s deadline for a negotiated plea and a calculation that defendant would eventually plead open, or it may have indicated nothing more than readiness on the part of the prosecutor to try a simple case rather than engage in further negotiations with a difficult defendant. In either case, the point, for present purposes, is that 
the parties 
were not, jointly, either indicating a desire to negotiate further or presenting a negotiated agreement for the court’s consideration. Given the circumstances, the circuit court’s statements regarding the expiration of its deadline for accepting a negotiated plea are simply irrelevant.

As the State noted in oral argument before this court, defendant was
 still
 trying to negotiate a plea agreement (with the court) on the day of trial, indicating that there was no agreement at that time. The point is well taken. Defendant’s counsel in oral argument before this court suggested that the two-year offer the State had previously made to defendant “arguably had not been withdrawn, at least not in the record.” This assessment of the record appears to be accurate; however, it is also irrelevant, since the offer had been 
rejected
 by defendant himself. Finally, we take note of the appellate court’s observation that “no objection was made to defendant’s attempt to plead following jury selection.” 334 Ill. App. 3d at 292. Why 
would 
the State object? The circuit court was offering defendant the option of entering an open plea of guilty or a jury trial–a trial for which the State was fully prepared and for which a jury had already been selected. The State apparently found either alternative acceptable. Logically, there would be no objection unless the State disagreed with the court’s mode of procedure.

We conclude that there was no negotiated plea agreement presented by the parties for the court’s consideration. Consequently, whether or not we believe that a court abuses, or abdicates, its discretion when it refuses to consider a negotiated plea agreement presented by the parties beyond a deadline set by the court, we have no occasion in this case to address the issue. The appellate court erred when it did so. For the foregoing reasons, we reverse the judgment of the appellate court and affirm that of the circuit court.

Appellate court judgment reversed;

circuit court judgment affirmed.